673 P.2d 809

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Tony Mark DRYDEN,
Defendant-Appellant.**

No. 14309.

Court of Appeals of Idaho.

Dec. 20, 1983.

Douglas R. Whipple, Burley, for defendant-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Jean Uranga and C.A. Daw, Deputy Attys. Gen., Boise, for plaintiff-respondent.

SWANSTROM, Judge.

In an attempted robbery, Tony Dryden stabbed a man. The victim identified Dryden as his assailant and Dryden was arrested after a struggle with three police officers. He pled guilty to one count of aggravated battery, I.C. § 18–907, and one count of resisting an officer, I.C. § 18–2703. The district judge sentenced him to indeterminate terms of fifteen years for the battery and five years for resisting an officer, ordering the sentences to run consecutively. The judge, who had previously arranged for Dryden to participate in an out-of-state drug rehabilitation program, then suspended both sentences. After two days in the program, Dryden was given leave to attend his sister's funeral and he never returned. When the district judge learned of that he issued a bench warrant. Dryden was arrested in Utah on another charge which was dropped when Dryden waived extradition and was returned to Idaho on the bench warrant. He appeared again, with counsel, before the judge who had sentenced him a month earlier. Dryden could offer no satisfactory explanation for his actions. His attorney's request for appointment of an examining psychiatrist was denied. The district judge revoked Dryden's probation and ordered execution of the original sentences. Dryden appeals. We affirm the sentences.

There are two issues on appeal. First, was Dryden entitled to a psychiatric examination prior to the execution of the sentences? Second, were the sentences unduly harsh?

## I

Dryden argues that under either of two statutes a psychiatrist or psychologist should have been appointed to examine him. First he argues that a probation violation is "criminal conduct" within the meaning of I.C. § 18–207. Under this section (prior to July 1, 1982)

(1) A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law.

(2) As used in this act, the terms "mental disease or defect" do not include an abnormality manifested only by repeated criminal or otherwise anti-social conduct.

Dryden also urges that the provisions of I.C. § 18–210 apply in this case. That statute is as follows:

No person who as a result of mental disease or defect lacks capacity to understand the proceedings against him or to assist in his own defense shall be tried, convicted, sentenced or punished for the commission of an offense so long as such incapacity endures.

Dryden argues that if either I.C. § 18–207 or § 18–210 were applicable then the district judge was required by I.C. § 18–211 to appoint a psychiatrist or a psychologist to examine Dryden. He relies on the following part of § 18–211:

Whenever the defendant has filed a notice of intention to rely on the defense of mental disease or defect excluding responsibility, or there is reason to doubt his fitness to proceed as set forth in this section, or reason to believe that mental disease or defect of the defendant will otherwise become an issue in the cause, the court shall appoint at least one (1) qualified psychiatrist or licensed psychol-

ogist or shall request the director of the department of health and welfare to designate at least one (1) qualified psychiatrist or licensed psychologist to examine and report upon the mental condition of the defendant.

It is clear that § 18–211 contains both mandatory and discretionary provisions. We turn first to the mandatory provision.

 Under former I.C. §§ 18–207 and 209, the existence of mental disease or defect would be an affirmative defense to "criminal conduct." The mandatory provision of § 18–211 clearly applies to this situation. Under subsection (2) of § 18–209:

[e]vidence of mental disease or defect excluding responsibility is not admissible unless the defendant, at the time of entering his plea of not guilty or within ten (10) days thereafter or at such later time as the court may for good cause permit, files a written notice of his purpose to rely on such defense.

Here the defendant had not previously filed a written motion within the time permitted by § 18–209 nor has he since. Moreover, it is apparent that "criminal conduct" in § 18–207 referred to conduct for which a person could receive a criminal conviction. The violation of probation, however, is not necessarily a crime in itself. *E.g., Ex parte Medley,* 73 Idaho 474, 253 P.2d 794 (1953). In the present case, although Dryden's failure to return to the rehabilitation program was a probation violation, it was not criminal. Dryden's reliance on I.C. § 18–207 is misplaced because that section was concerned with mental disease or defect at the time of *criminal conduct.* We hold that the mandatory provision of I.C. § 18–211 for "automatic" appointment of an examiner is not applicable in this case. We will next consider the discretionary provisions.

 Under these provisions of the statute it is clear that the defendant must do more than simply request a psychiatric examination. He must show "there is reason to doubt his fitness to proceed . . . ." Without deciding whether a court would ever be *required* to order a psychiatric or psychological examination at a probation

revocation hearing, we hold that Dryden did not state a sufficient reason to place his competence in issue. He stated only that he did not know why he violated his probation and his attorney professed an abiding curiosity about "why in the world he is behaving as he has been behaving." Dryden's mother and sister both expressed the belief that he needed psychiatric help.

The colloquies between Dryden and the judge during his various court appearances clearly demonstrate that there was no reason to doubt Dryden's fitness to proceed. Nothing he said or did necessarily indicates mental incompetency. Dryden's own statements when his plea was taken on April 20, 1981; when the judge conferred in chambers on May 5, 1981 about the possibility of placing Dryden in a Seattle drug treatment facility; when Dryden was initially sentenced on May 11; and when Dryden's probation was revoked on June 22, all strongly support the view that Dryden was an informed and competent participant in the legal proceedings against him. The record indicates—as the judge clearly saw—that it was chronic drug abuse, not mental disease or defect, that underlay Dryden's extensive anti-social conduct. We hold that the district judge was not required by the Idaho statutes to appoint a psychiatrist or a psychologist in this instance.

At oral argument on this appeal, however, Dryden's counsel urged that probation cannot be revoked unless it is shown the probationer was "responsible" for the failure to comply with the critical terms of probation. He cited *Bearden v. Georgia,* —— U.S. ——, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983).

Bearden was an indigent who—under Georgia's First Offender's Act—had been sentenced to probation with the condition that he pay a fine and restitution. When Bearden failed to make the scheduled payments the sentencing judge revoked his probation and imposed a prison sentence without making any determination of whether Bearden was "responsible" for the violation. The Georgia Court of Appeals affirmed the conviction. The Georgia Supreme Court de-

nied review. The United States Supreme Court granted certiorari. The Supreme Court noted that the record showed Bearden made bona fide efforts to comply with the conditions of his probation, but that he had been laid off and had been unable to find another job. The Court framed the question presented as "whether a sentencing court can revoke a defendant's probation for failure to pay the imposed fine and restitution, absent evidence and findings that the defendant was somehow responsible for the failure or that alternative forms of punishment were inadequate." —— U.S. at ——, 103 S.Ct. at 2069. The Supreme Court reversed the judge's order as being a violation of the fourteenth amendment's requirement of "fundamental fairness." The case was remanded to determine whether the defendant had made sufficient bona fide efforts to comply with the conditions of his probation and, if so, whether there were adequate "non-imprisonment" alternatives available to satisfy the state's interest in punishment and deterrence.

Dryden would have us apply *Bearden* by analogy. He argues that if he was mentally ill, he could not be truly "responsible" for his failure to stay with the drug abuse program. Dryden contends that the judge should have determined the extent to which mental illness affected Dryden's responsibility for the violation before revoking his probation. We will assume, without deciding, that the reasoning of *Bearden* applies in cases where a defendant is not responsible for a probation violation because of mental illness.

The question of whether someone can be imprisoned for a probation violation although he was not "responsible" for that violation, however, is quite different from whether a defendant is entitled to a psychiatric examination at a probation violation hearing. *Bearden* does not stand for the proposition that a defendant may stand mute and force the state to prove "responsibility." Even if a defendant's lack of responsibility is a defense to a probation violation this does not mean that his responsibility is an element of the violation to be

affirmatively proved by the state in every case. We hold that the defendant, at the very least, must make a sufficient showing on this point to create a genuine issue concerning his responsibility for the probation violation.

In *Bearden* the record before the sentencing court was sufficient to raise the issue of whether the defendant was responsible for failing to pay the ordered fine. Bearden and his wife testified concerning their lack of income and assets and his repeated efforts to obtain work. Dryden, on the other hand, presented no such evidence of inability to perform the terms of his probation. Rather, he seeks to "bootstrap" himself into a *Bearden* posture by contending that a sensible person would not have violated probation as he did; and, therefore, he was not responsible. The argument falls of its own weight. We hold as a matter of law that this argument does not create a genuine issue as to responsibility. Dryden was not entitled to a psychiatric examination.

## II

Dryden next asserts that the sentences were unduly harsh. However, it is important to remember that no appeal was taken, within forty-two days or at all, from the judgment of conviction. I.A.R. 14(a). This appeal is from the "Order Revoking Probation and Commitment to State Penitentiary." It is from an "order made after judgment affecting the substantial rights of the defendant." I.A.R. 11. The issues on appeal are confined to that order. Because Dryden did not appeal when the sentences were initially pronounced, he cannot now challenge their reasonableness at that time. We are restricted to a determination of whether the sentences now appear harsh "in light of circumstances existing when the court ordered the sentences to be executed upon revocation of probation." *State v. Tucker,* 103 Idaho 885, 888, 655 P.2d 92, 95 (Ct.App.1982).

A sentence within the statutory maximum will not be disturbed on appeal unless the appellant affirmatively shows

the district judge abused his discretion. *State v. Lopez,* 102 Idaho 692, 638 P.2d 889 (1981). An abuse of discretion is shown if the sentence is unreasonable considering all the facts of the case. *State v. Nice,* 103 Idaho 89, 645 P.2d 323 (1982). A sentence is reasonable, however, to the extent it appears necessary to accomplish the primary goal of protecting society and to achieve any of the related goals of deterrence, rehabilitation or retribution. *State v. Toohill,* 103 Idaho 565, 650 P.2d 707 (Ct.App.1982). Dryden must show that, under any reasonable view of the facts, his sentences were excessive in light of the foregoing criteria. *Id.*

The relevant facts to be considered include those which came to light between pronouncement of the original sentences and their execution upon revocation of probation. *State v. Tucker, supra.* After Dryden failed to return to the rehabilitation program, he spent some time in Salt Lake City. While there he was involved in an aggravated battery factually similar to the crime in the present case. The charges were later dropped because the victim was retarded and the prosecutor did not think her testimony would satisfy a jury. Furthermore, the district judge delivered an explicit warning at the original sentencing hearing that if Dryden failed the program he would have to serve his sentences. Dryden then readily accepted the conditions of probation. Yet he manifested an unwillingness to abide by those conditions by failing to return to the program. He also indicated at the probation revocation hearing that he had no intention of returning to the same rehabilitation program. Dryden's unwillingness to abide by the conditions of his probation justified the district court's decision not to allow him to remain on probation. *State v. Mummert,* 98 Idaho 452, 566 P.2d 1110 (1977). In making that decision the court was also entitled to consider the recent criminal charge made against Dryden in Utah, even though the charge had been dropped. *See State v. Bell,* 103 Idaho 255, 646 P.2d 1026 (Ct.App.1982).

At the revocation hearing Dryden's counsel made an oral motion requesting reduction of the sentences under I.C.R. 35. The motion was denied and Dryden asserts this was error. A district court may reduce a sentence upon revocation of probation, but it is not required to do so. I.C.R. 35. From our own review of the record we conclude that the sentences imposed upon violation of probation were not unduly harsh and did not represent an abuse of discretion. Therefore, we hold that the court did not err by declining to reduce them. The sentences are affirmed.

WALTERS, C.J., and BURNETT, J., concur.