680 P.2d 869

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Charles T. LOPEZ, Defendant-Appellant.**

**Nos. 14695, 14696 and 14698.**

Court of Appeals of Idaho.

April 30, 1984.

Douglas R. Whipple, Burley, for defendant-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Steven W. Berenter, Deputy Atty. Gen., Boise, for plaintiff-respondent.

BURNETT, Judge.

These consolidated cases present issues of sentence review. Having pled guilty, Charles Lopez was convicted of first degree kidnapping, first degree burglary and two counts of robbery. He received concurrent sentences, each for an indeterminate period not exceeding fifteen years.

Lopez subsequently moved to reduce the sentences under I.C.R. 35. The district court denied the motion, and Lopez appealed.

We are asked to decide two issues. (1) Do Lopez's sentences violate his right to equal protection because they are more severe than sentences imposed upon some of his accomplices? (2) Are Lopez's sentences unduly harsh, representing an abuse of sentencing discretion? Because we answer both questions in the negative, we uphold the district court's refusal to reduce the sentences originally imposed.

I

We first examine the equal protection issue. Lopez committed the crimes in question with three accomplices—his brother and persons named Spurgeon and Piper. All four individuals participated in robberies of a grocery store in Burley and a gas station in Heyburn. Two months later the same group (except Lopez's brother), burglarized a private home and kidnapped John Evans, Jr.—son of the Governor of Idaho. The kidnapping occurred in circumstances indicating an intent to extort money, but the apparent scheme was frustrated by police intervention.

Piper and Spurgeon received the same concurrent, indeterminate fifteen-year sentences as were imposed upon Lopez. However, Piper's sentences for the kidnapping and burglary were reduced later to one year in the county jail; and his sentences for robbery were reduced to five years' probation. Spurgeon's sentences—so far as the instant record shows—were not modified. Lopez's brother originally was sentenced to an indeterminate ten-year term for robbery; but the court retained jurisdiction for 120 days. At the end of that period, the court suspended execution of the sentence and placed Lopez's brother on four years' probation.

In this appeal, Lopez focuses his equal protection argument upon a perceived disparity between his sentences and those ultimately received by his brother and Piper. We are unable to ascertain the reasons for

reduction of the initial sentences in those other cases. A full record of the cases has not been furnished. As to Piper, we have only the sentence reduction order, reciting that such action would serve "the ends of justice and the best interest of the public as well as the defendant." Regarding Lopez's brother, we are not informed of the reasons why jurisdiction was retained; nor do we have the evaluation report by the Board of Correction, which the court considered in ultimately granting probation.

■ An appellant bears the burden of furnishing a record adequate to evaluate his claim of error. *E.g., State v. Wolf,* 102 Idaho 789, 640 P.2d 1190 (Ct.App.1982). Upon the record provided to us, we cannot ascertain whether the varying sentences actually reflect disparate treatment of the defendants or whether they were properly attuned to individual circumstances presented in each case.

■ Sentences cannot be deemed disparate upon simplistic comparison of results. Our Supreme Court has directed trial courts to sentence individual criminals, not crime categories. *State v. Allen,* 98 Idaho 782, 572 P.2d 885 (1977). Where sentencing is individualized, differing sentences for similar crimes do not necessarily signify that a particular sentence is inappropriate to the case where it has been imposed. *Holmes v. State,* 104 Idaho 312, 658 P.2d 983 (Ct.App.1983).

■ Lopez's claim that he has been denied equal protection is, at its roots, a constitutional challenge to the principle of individualized sentencing. In *State v. Seifart,* 100 Idaho 321, 597 P.2d 44 (1979), our Supreme Court entertained a similar challenge. There, as here, co-defendants received different sentences. In response to claims that equal protection and due process had been violated, the court stated, "There is no requirement under the due process clause or any other clause of the Constitution which imposes a mandate upon the [sentencing] Court to render uniform sentences against criminal defendants." *Id.* at 324, 597 P.2d at 47. *Seifart*

rejected the notion that leniency perceived in the treatment of one defendant becomes the constitutional yardstick by which treatment of another defendant must be measured. *See generally United States v. Vita,* 209 F.Supp. 172, 173 (E.D.N.Y.1962); *see also State v. Bowcutt,* 101 Idaho 761, 620 P.2d 795 (1980); *State v. Kohoutek,* 101 Idaho 698, 619 P.2d 1151 (1980).

While the relative merits of uniform or individualized sentencing may be debated as a matter of policy, neither alternative is constitutionally infirm. So long as individualized sentencing remains the policy of this state, as determined by the Legislature and Supreme Court, our court will continue to apply it.

■ Some courts have indicated that where differences among sentences are arbitrary, or based on improper considerations, there may be a denial of equal protection. *E.g., Drinkwater v. State,* 73 Wis.2d 674, 245 N.W.2d 664 (1976). However, in order for an appellate court to make such a determination, the record must be complete. *State v. Bresolin,* 13 Wash.App. 386, 534 P.2d 1394 (1975). In this case, as noted above, the record presented to us is incomplete. Moreover, questions of arbitrariness and of improper consideration are subsumed by the general question whether a sentence—when evaluated against the circumstances of the case where it was imposed—represents an abuse of sentencing discretion. We now turn to that question.

## II

■ Lopez could have been sentenced to a maximum term of life for the kidnapping conviction (I.C. § 18–4504); a term of fifteen years for the burglary conviction (I.C. § 18–1403); and two terms of life for the robbery counts (I.C. § 18–6503). The concurrent fifteen-year, indeterminate sentences he actually received were well within the statutory limits. Nevertheless, he contends that his sentences were unduly harsh and should have been reduced pursuant to his Rule 35 motion.

In reviewing the length of confinement under indeterminate sentences, we will take account of parole eligibility. We presume that Lopez's actual term of confinement will be at least one-third of his sentence. *See State v. Toohill*, 103 Idaho 565, 650 P.2d 707 (Ct.App.1982). In this case the *Toohill* measure coincides with the five-year period of confinement mandated by I.C. § 20–223 before parole could. be granted. The question is whether confinement for five years is reasonable.

■ As explained in *Toohill*, a term of confinement is reasonable to the extent it appears necessary, at the time of sentencing, to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation and retribution. *Id.* These criteria also apply to rulings on motions to reduce sentences under Rule 35. The decision whether to reduce a sentence rests in the sound discretion of the sentencing court. *State v. Sutton*, 106 Idaho 403, 679 P.2d 680 (Ct.App.1984); *State v. Arambula*, 97 Idaho 627, 550 P.2d 130 (1976). Such a motion is essentially "a plea for leniency" which may be granted if "the sentence originally imposed was, for any reason, unduly severe." *Sutton*, 106 Idaho at 404, 679 P.2d at 681. Where an appeal is taken from denial of a Rule 35 motion, our scope of review includes all information presented at the original sentencing hearing and at a subsequent hearing on the motion. *Id. See also State v. Dryden*, 105 Idaho 848, 673 P.2d 809 (Ct.App.1983); *cf. State v. Tucker*, 103 Idaho 885, 655 P.2d 92 (Ct.App.1982) (review of sentence length after probation revocation should include events occurring between initial sentence imposition and probation revocation).

■ Our examination of the record focuses upon the nature of the offenses and the character of the offender. *State v. Shideler*, 103 Idaho 593, 651 P.2d 527 (1982). In the present appeal, the facts surrounding the offenses show that Lopez was the driver of a getaway car. It does not appear that he entered the Evans home, nor that during the earlier robberies he entered the grocery store or the gas station. However, he participated in planning the crimes and he owned the firearms used in commission of each offense. All of the crimes were serious. The robberies and kidnapping presented threats to life; and the kidnapping was particularly traumatic to the victim's immediate family.

■ Concerning Lopez's character, the presentence report shows that he was twenty-two years old when he was sentenced. His past criminal record consisted only of a juvenile runaway status and two traffic convictions. He had served as an Airborne Ranger in the United States Army. A psychologist testified that the criminal incidents had been out of character for Lopez; but he also noted that Lopez tended to fantasize about events involving use of weapons. He stated that Lopez was in need of "reality testing"—confronting real consequences of his actions. It was further noted at the sentencing hearing that Lopez was serving as a reserve police officer when the crimes were committed. The sentencing judge stated that Lopez had committed a serious breach of public trust.

At the subsequent hearing on the Rule 35 motion, Lopez presented evidence relating to his conduct in the Idaho State Correctional Institution (ISCI). A letter from the facility chaplain stated that Lopez should be pursuing an education in the private sector. Documents obtained from Lopez's prison supervisor showed that he had done well in his classes there and in his work. The prison psychologist also reported favorably on Lopez. The sentencing judge took all these factors into consideration, but finally decided not to reduce Lopez's sentences. He concluded that "the sentence[s] [are] not unduly harsh, notwithstanding Mr. Lopez's . . . record."

In summary, the record at the time of the original sentencing portrayed a young man who had committed serious crimes but who appeared to have rehabilitation potential. The record at the time of the Rule 35 motion showed that this potential was being exhibited at the ISCI. However, rehabilitation—important as it may be—is not

The sole objective of our criminal justice system. As noted in *Toohill*, sentencing goals also include protection of society, retribution and deterrence. The district court took due account of Lopez's rehabilitation potential by making the sentences concurrent and indeterminate. Moreover, by prescribing at least five years' confinement, the sentences reasonably could be viewed as protecting society while Lopez learned the consequences of his acts. The sentences also served to punish the serious crimes committed and to deter others from committing similar offenses.

This balance of sentencing objectives was not fundamentally changed by evidence presented at the hearing on the Rule 35 motion. We conclude that the district court did not abuse its discretion by refusing to reduce the sentences originally imposed.

The order denying Lopez's Rule 35 motion is affirmed.

WALTERS, C.J., and SWANSTROM, J., concur.