687 P.2d 17

STATE of Idaho, Plaintiff-Respondent,

v.

Bryan O. SPURGEON,
Defendant-Appellant.

Nos. 14438, 14439 and 14441.

Court of Appeals of Idaho.

Aug. 29, 1984.

Donald J. Chisholm of Goodman, Duff & Chisholm, Rupert, for defendant-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Stephen J. Gledhill and Steven Berenter, Deputy Attys. Gen., Boise, for plaintiff-respondent.

SWANSTROM, Judge.

Upon his pleas of guilty in three separate cases, Bryan Spurgeon was convicted of two robberies, first degree kidnapping and first degree burglary. On October 22, 1981, he received four concurrent sentences, each for an indeterminate term not to exceed fifteen years. Spurgeon's three

appeals have been consolidated. His sole contention in each case is that the district court abused its discretion by imposing excessive sentences. Spurgeon asks this court to reduce these sentences. We decline the request and affirm the sentences.

Spurgeon was twenty-two when these crimes were committed. Until then his only record of criminal activity consisted of a few speeding tickets. On January 27, 1981, Spurgeon and three companions, Russell Piper, Jimmy Lopez and Charles T. Lopez, robbed an Albertson's store in Burley, Cassia County, Idaho. Spurgeon, one of two who were armed, carried a sawed-off shotgun into the supermarket and took approximately $3,500 at gun point. Spurgeon's own statements in the presentence report show that he played a major role in the planning and execution of this robbery. He received most of its proceeds.

The second crime occurred in Minidoka County on February 15 when three of the same four persons robbed a service station in Heyburn, Idaho. Again Spurgeon carried a shotgun and entered the premises while Jimmy Lopez acted as lookout and Russell Piper acted as driver. Charles Lopez—a reserve police officer at the time—did not directly participate in this robbery, but sought to divert the attention of the police from the three who did participate. Approximately $1,000 was taken in this robbery.

The final episode occurred in Cassia County on May 15 when Spurgeon and Russell Piper, both masked and carrying sidearms, entered the home of a bank manager in Burley, Idaho, during the early morning hours. Charles Lopez drove them there and waited nearby in the car. This apparent attempt to extort money from a bank failed when the wife of the manager jumped, unnoticed, from a bedroom window and alerted the police. As a result of this conduct Piper, Spurgeon and Lopez were

all charged with first degree kidnapping and first degree burglary.[1]

Spurgeon could have been sentenced to a maximum term of life for the kidnapping conviction (I.C. § 18–4504); a term of fifteen years for the burglary conviction (I.C. § 18–1403); and two terms of life for the robbery counts (I.C. § 18–6503). The concurrent fifteen-year indeterminate sentences he actually received were well within the statutory limits. Nevertheless, he contends that his sentences were unduly harsh and should be reduced.

In reviewing the length of confinement under indeterminate sentences, we will take account of parole eligibility. We presume that Spurgeon's actual term of confinement will be at least one-third of his sentence. See State v. Toohill, 103 Idaho 565, 650 P.2d 707 (Ct.App.1982). In this case the length of confinement under Toohill coincides with the five-year period of confinement mandated by I.C. § 20–223 before parole could be granted. The question then is whether confinement for five years is reasonable.

As explained in Toohill, a term of confinement is reasonable to the extent it appears necessary, at the time of sentencing, to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation and retribution. Our examination of the record focuses upon the nature of the offenses and the character of the offender. State v. Shideler, 103 Idaho 593, 651 P.2d 527 (1982). In the present case, the facts surrounding the offenses show that Spurgeon played a major part in the planning and execution of each of the crimes. In each instance Spurgeon carried a firearm into the building where the crime occurred. At the sentencing hearing he explained why he alone went into the Albertson's store: "I figured I would go in there and be the best, because I figured I would go in

1. Charles Lopez and Russell Piper also received concurrent, indeterminate fifteen-year sentences. However, Piper's sentences were later reduced. The younger Lopez brother, Jimmy, received a lesser sentence and was later released on probation. Charles Lopez appealed his sentences, but they were affirmed. See State v. Lopez, 106 Idaho 447, 680 P.2d 869 (Ct.App. 1984).

and be the less likely one to do something either stupid or hurt somebody, or I figured—Well, I simply figured I was the best one qualified for it." Spurgeon admitted he conceived the idea of obtaining money from the bank in Burley by seizing the bank manager. The seriousness of each of these crimes cannot be downplayed. As we noted in *State v. Lopez, supra* at n.1, the robberies and kidnapping presented threats to life; and the kidnapping was particularly traumatic to the victim's immediate family.

The district court expressed "frustration" in trying to balance these serious crimes against the "immaculate" prior record of Spurgeon. The court clearly recognized the always difficult and often misunderstood need to focus upon the offender as well as upon the offense. *See State v. Wolfe,* 99 Idaho 382, 582 P.2d 728 (1978). Spurgeon had a good history of employment, possessing computer skills and the ability to work well with others. He was in the U.S. Army National Guard with the rank of sergeant. His superiors, as well as other associates, contributed positive information about Spurgeon's character, intelligence, work habits and dependability. The district court, however, was also faced at sentencing with the frank admissions of Spurgeon that when he and his associates were first contemplating these serious crimes, they had the expectation that if they were caught they would receive only a "[pat] on the wrist .... [T]he court system was easy on first time people."

A psychiatrist who examined Spurgeon submitted a detailed report. It suggested that Spurgeon had some "mental disorder" which should be treated. He found that Spurgeon had an excessive fascination with military tactics and with police and criminal activities, which gave him a grandiose, distorted view of reality. He attributed Spurgeon's plunge into criminal episodes to this "obsession" and also to his inability to deal effectively with his friends and with his own financial problems. The psychiatrist thought that if Spurgeon could be professionally treated "his prognosis for rehabilitation would be good and the likelihood of any repeat criminal behavior would be

quite small." He thought that Spurgeon's arrest and subsequent jailing had already effected a great change in Spurgeon's concept of the real world.

The record shows the court considered the criteria set forth in I.C. § 19–2521 in choosing imprisonment rather than probation. The court considered whether a lesser sentence would depreciate the seriousness of the crimes. The court also struggled with what sentence would be appropriate to punish and deter the defendant, and deter other people in the community. Considering that the crimes took place over a span of time, the court felt it was lenient not to make one or more of the sentences consecutive. The court also recognized Spurgeon's potential for rehabilitation by imposing indeterminate rather than fixed sentences, which will allow Spurgeon to seek parole when he has served five years.

We conclude that the district court properly considered both the offenses and the offender in passing these sentences. We cannot say that the balance he struck was unreasonable. Because we believe the sentences reasonably can be viewed as necessary to protect society and to achieve one or more of the related goals of deterrence, retribution and rehabilitation, we affirm the sentences.

WALTERS, C.J., and BURNETT, J., concur.