723 P.2d 923

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Preston Leon GALBRAITH, Defendant-Appellant.**

No. 15807.

Court of Appeals of Idaho.

July 29, 1986.

Stanley G. Cole, Rupert, for defendant-appellant.

Jim Jones, Atty. Gen. by Lynn E. Thomas, Sol. Gen., and A. René Fitzpatrick, Boise, for plaintiff-respondent.

BURNETT, Judge.

Preston Galbraith stands convicted of aggravated assault for striking and seriously injuring his infant daughter. Judgment of conviction was entered upon his plea of guilty after the charge against him was reduced from aggravated battery, as origi-

nally alleged. Galbraith received an indeterminate sentence of five years in custody of the Board of Correction. He later filed a motion under I.C.R. 35, seeking reduction of the sentence so he could be released for psychotherapy that he claimed was unavailable in confinement. The district court denied the motion. On appeal Galbraith argues that the court abused its discretion in so ruling, and that the sentence was cruel and unusual within the proscriptions of the state and federal constitutions. For reasons explained below, we affirm the district court's order denying relief.

Galbraith's constitutional attack, insofar as it relates to original pronouncement of the sentence, is untimely. He did not appeal the judgment containing the sentence. He appealed only the subsequent order denying his Rule 35 motion. We will not now review the sentence in light of the record existing when the sentence was imposed. *See, e.g., State v. Torres,* 107 Idaho 895, 693 P.2d 1097 (Ct.App.1984); *State v. Hirshbrunner,* 105 Idaho 168, 667 P.2d 271 (Ct.App.1983). Accordingly, our focus is upon the Rule 35 motion and upon the expanded record available when that motion was entertained. Because we conclude that the judge did not abuse his discretion in denying the motion, we also implicitly conclude that Galbraith failed in the Rule 35 proceeding to show how relief was necessary to obviate any cruel or unusual punishment.

A motion to reduce a sentence, upon the ground that it is unduly harsh, is addressed to the sound discretion of the district court. *State v. Arambula,* 97 Idaho 627, 550 P.2d 130 (1976); *State v. Russell,* 109 Idaho 723, 710 P.2d 633 (Ct.App.1985); *State v. Araiza,* 109 Idaho 188, 706 P.2d 77 (Ct.App. 1985). The motion essentially is a plea for leniency. *State v. Sutton,* 106 Idaho 403, 679 P.2d 680 (Ct.App.1984). In this case, Galbraith could have received a fixed term, without parole, of five years for the aggravated assault. I.C. §§ 18–905, –906. He actually received an indeterminate sentence, creating an opportunity to earn parole.

When an indeterminate sentence is imposed, the duration of confinement generally is treated, for the purpose of appellate review, as one-third of the facial length of the sentence. *State v. Toohill,* 103 Idaho 565, 650 P.2d 707 (Ct.App.1982). In determining whether such duration is excessive, we consider the primary objective of protecting society, together with the related goals of deterrence, rehabilitation and retribution. *Id.* These criteria apply not only to review of a sentence on direct appeal but also to review of a judge's refusal to reduce the sentence under Rule 35. *State v. Lopez,* 106 Idaho 447, 680 P.2d 869 (Ct.App.1984).

Here, the victim of the crime was Galbraith's seven-month-old daughter. Two incidents of abuse occurred. In the first, Galbraith kicked the child off a bed, cracking her ribs. In proceedings under the Child Protective Act, the girl was placed with her maternal grandparents and Galbraith was enrolled in a counseling program. However, while Galbraith was baby-sitting the child at the grandparents' home, the second incident—giving rise to this criminal case—arose. The girl awoke from a nap and cried. Galbraith struck her in the head with his fist. Sometime later the girl began to experience difficulty breathing and was taken to a hospital. There she was found to have a complex skull fracture and a secondary subdural hematoma which caused bleeding into her left eye, possibly resulting in permanent vision impairment.

When this second incident occurred, Galbraith was eighteen years old. He had graduated from high school. He and his wife married while still in high school because she was pregnant. Galbraith was unemployed at the time of this offense, but was an enlisted member of the Marine Corps Reserve. He had no prior criminal record of consequence.

After his arrest and conviction, Galbraith underwent a psychological evaluation. A presentence report was prepared. Galbraith was described as generally intelligent. He told his evaluators that he had

been abused as a child. The psychological evaluation concluded that Galbraith had a "poor social conscience, communication problems and a pronounced lack of ability to empathize...." The psychologist thought the patient was a "typically poor" candidate for therapy because he would have "difficulty owning responsibility for [his] anger and hostility, and [would be] more comfortable in projecting that to others. [He] can give good lip service to therapeutic change, but the prognostic picture is typically poor." In the psychologist's opinion, Galbraith represented a "very significant risk of danger if being left at large means having access to his child." However, Galbraith was not considered a danger to the general public.

The presentence investigator noted the severe impact of the assault on the victim and suggested that incarceration was a "viable alternative for the court to seriously consider." Galbraith asked for a sentence of probation. The prosecutor recommended an indeterminate sentence of five years, with jurisdiction retained for 120 days. The court decided against probation and against retained jurisdiction. He noted the seriousness of the offense and the fact that it had been committed while Galbraith was in counseling for the prior incident. The judge found that Galbraith presented a continuing risk to the victim and to other defenseless persons at whom he might become angry. The judge elected to impose a five-year sentence, making it indeterminate.

In support of his Rule 35 motion, Galbraith introduced testimony by a licensed clinical psychologist who specialized in child and adolescent behavioral problems. This psychologist was more optimistic than the prior psychologist about Galbraith's therapeutic prospects. He recommended that Galbraith be placed in psychotherapy as soon as possible. He testified that age and the passage of time since the abusive incidents were factors bearing on the likelihood of a successful outcome. He opined that the therapy Galbraith needed was unavailable at the Idaho State Correctional Institution. However, he admitted that if treatment were delayed until Galbraith earned parole, which might occur approximately one year after the Rule 35 hearing, there would not be a substantial diminution in the probability of success.

The judge observed that he was being asked to weigh the risk of impaired rehabilitation if Galbraith remained in confinement against the risk to society if Galbraith were released early upon reduction of his sentence. The judge found the latter risk to be greater. He reiterated that the sentence, requiring about twenty months' total incarceration before parole eligibility, was appropriate to the severity of the crime.

Based upon the foregoing summary, we believe the judge gave informed and sensitive consideration to the issues raised. The sentence is consistent with the objective of protecting society. It offers Galbraith the possibilities of parole and therapy for his eventual rehabilitation. We conclude that the district court did not abuse its discretion in declining to reduce the sentence. Accordingly, the order denying relief on Galbraith's Rule 35 motion is affirmed.

WALTERS, C.J., and SWANSTROM, J., concur.