**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 40721**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2014 Unpublished Opinion No. 531 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: May 30, 2014 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| GREGORY ALLYNN GENTRY, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Sixth Judicial District, State of Idaho, Bannock County. Hon. David C. Nye, District Judge.

Order revoking probation and executing unified sentence of five years, with three years determinate, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Ben Patrick McGreevy, Deputy Appellate Public Defender, Boise, for appellant. Ben Patrick McGreevy argued.

Hon. Lawrence G. Wasden, Attorney General; Lori A. Fleming, Deputy Attorney General, Boise, for respondent. Lori A. Fleming argued.

_____

PERRY, Judge Pro Tem

Gregory Allynn Gentry appeals from the district court's order revoking his probation and executing his suspended sentence. For the reasons that follow, we affirm.

**I.**

**FACTS AND PROCEDURE**

Gentry was incarcerated at the Bannock County Jail when he struck a jail deputy. A criminal complaint was filed, alleging that Gentry committed battery on detention staff. Idaho Code § 18-915. At a May 2012 hearing, the parties submitted a binding plea agreement and a plea agreement questionnaire. During the hearing, Gentry pled guilty to the crime of battery on detention staff and admitted to a probation violation in a separate case. In return, the State agreed to dismiss two other cases involving the possession of methamphetamine. The district

1

court accepted Gentry's plea and admission of a probation violation, but the court scheduled another hearing to address sentencing and disposition.

At a July 2012 hearing, the district court approved the binding plea agreement. Gentry's counsel recommended that Gentry be placed on probation, noting that "it's contemplated that there would be an interstate compact accomplished to Minnesota." The court sentenced Gentry to a unified term of five years, with three years determinate, to run consecutively with a 2009 case. The court then suspended the sentence and placed Gentry on probation, subject to terms and conditions imposed by the Department of Correction and subject to additional terms and conditions imposed by the court. After announcing the sentencing and disposition, the district court explained to Gentry that it was a "very close call" as to whether Gentry would be on probation or participate in a rider. Additionally, Gentry was warned by the court: "If you mess up and you come back in front of me, you'll most likely be going to prison." After Gentry's counsel informed the court that Gentry did "not think that Pocatello is a very good option for him," and learning that Gentry had a relative in Boise, the court permitted Gentry "to be released, upon approval by probation, to go to Boise."

In August 2012, a Boise probation officer submitted a report of a probation violation to the district court in Bannock County. The district court issued a bench warrant, and Gentry was brought before the court in November 2012 for a hearing. At the November 2012 hearing, Gentry admitted to certain probation violations as part of a plea agreement and the State agreed to withdraw other alleged violations. Based on an in-chambers discussion between the parties, the court agreed to place Gentry back on probation so that Gentry could seek an interstate compact transfer to North Carolina:

> [The Court]: It seems to me, Mr. Gentry, given the history here, that the best way to protect yourself from getting a new violation is to keep you in jail until that interstate compact's approved.
> [Gentry]: I completely agree with you.
> [The Court]: All right. Then what I'm going to do is I'm going to put you back on probation, but it's going to be on the condition that you will remain in jail until you get an interstate compact. *If the interstate compact fails, then you'll come back in front of me for a different disposition, and we'll figure out what to do at that point.* Do you understand that?
> [Gentry]: Yes, your Honor.

(Emphasis added.) After the hearing, the court filed an order continuing probation with three additional conditions:

> 1. You will apply through the Interstate Compact to transfer to North Carolina to live with your maternal Aunt. The Court will waive the application fee for the Interstate Compact.
> 2. Should you fail to be approved for the Interstate Compact to North Carolina, you will need to come back before the Court.
> 3. You will remain incarcerated at the Bannock County Jail until the Court sends a separate order to release you.

In December 2012, a probation officer with the Department of Correction filed an order to show cause alleging that the first additional condition had been violated because of an e-mail from Gentry's aunt stating that she could not support Gentry in North Carolina. In the first week of January 2013, Gentry and his counsel appeared at a hearing, acknowledging that the interstate compact transfer to North Carolina would not succeed:

> [Gentry's counsel]: Your Honor, it is still my client's desire to not be in the Pocatello area anymore. I think that that is prudent and reasonable given his past history in Pocatello, Idaho, but unfortunately find ourselves in a situation where he's not able to interstate compact to anyplace else with family at this point in time. And so it appears that the only option that is now available before him would be probation locally, and then working on transferring his probation elsewhere should he be able to put the resources together.
>
> . . . .
>
> [The Court]: All right. So what I hear you telling me, [Gentry's counsel], is that in my judgment and order I said that he was to apply to the interstate compact to transfer to North Carolina. That's now out of the question; correct?
>
> [Gentry's counsel]: That's correct, your Honor. I believe that that was initiated, contacts were made, and then that's when we were made aware that the aunt in North Carolina would not be able to assist Greg in interstate compact to North Carolina.
>
> [The Court]: I guess the question that I have, then, is I don't know what the State's position is on this, and I don't know that they've been given adequate time. I don't know if they will agree to local release.
>
> I think what we better do is set this for further proceedings and give them a chance to talk to probation, see if this is something they want to agree to or object to.

The court set the matter for further proceedings two weeks later. In the interim, Gentry's counsel submitted a motion for work release and an addendum motion for work release.

At the final hearing relevant to this appeal, held in mid-January 2013, Gentry's counsel requested that Gentry be permitted work search or work release. The district court then heard arguments from Gentry's counsel and from the State. During the State's argument, Gentry's counsel objected:

[Gentry's counsel]: Your Honor, I would object to--there's a previous plea agreement concerning the probation violation. There was certain probation violations admitted to and others dismissed. There was an agreement as to probation. The only issue was whether or not we could accomplish an interstate compact.

The Court at that time--when the Court took the admissions as to the previous probation violations, the Court--the only issue was whether that interstate compact would be accomplished. Otherwise, there's an agreement on the record to place Mr. Gentry on probation from the State. . . .

[The Court]: I don't remember that agreement. The problem I've got is that one of the terms and conditions of probation was the interstate compact.

[Gentry's counsel]: And that's the point I'm making, your Honor. That's the particular issue. The Court advised Mr. Gentry at that point in time that they would--that you would place him on probation--

[The Court]: Which I did.

[Gentry's counsel]: Which you did, your Honor. And, in fact, advised Mr. Gentry and myself that if the interstate compact was successful, he would not be given credit for the time while waiting at the Bannock County Detention Center. However, the Court, depending on the final disposition of that interstate compact, would take that into consideration once again as to whether he was given credit for that time in the disposition.

[The Court]: I'm not following you. Are you telling me that the only thing I can do today is put him on probation?

[Gentry's counsel]: Of course not, your Honor. But I am reporting to the Court that the Court advised Mr. Gentry when placing him on probation that if the interstate compact was successful, he wasn't going to get credit for the time while he sat out at the Bannock County Detention Center.

[The Court]: Okay. But it wasn't successful.

Later in the hearing, the court again questioned Gentry's counsel about counsel's argument at the hearing:

[The Court]: All right. I'm still not following your argument as to why I cannot revoke probation at the current stage. Are you telling me I cannot do it, or I should not do it?

4

[Gentry's Counsel]    To be fair, your Honor, the correct--the Court ought not. The Court should not revoke probation at this point in time. I'm certainly not saying the Court cannot revoke probation.

[The Court]:    That's what I heard you say.

[Gentry's counsel]:    And I apologize if I led the Court to believe that in any form or fashion, your Honor. I just believe that given the fact that the Court has previously placed Mr. Gentry on probation under the condition that he execute an interstate compact, it seems unreasonable to me that the Court revoke probation because those interstate compacts were not successful.

Of course I understand the Court's position that the Court may be basing more of its decision on more information; however, the nature of the probation violations here, which are probation violations, are certainly not of the most heinous nature. In essence, what we have is Mr. Gentry moving out of his sister's house and leaving the probation department when he was to take a urinalysis, your Honor.

The court also permitted Gentry to give a statement, and Gentry reminded the court that he did not want to stay in Pocatello. Following Gentry's statement, the district court announced that it was going to revoke probation and execute Gentry's suspended sentence, and a written order was issued after the hearing. Gentry filed a notice of appeal from this written order.

## II.

## ANALYSIS

Gentry raises two issues on appeal. First, Gentry contends the district court abused its discretion by revoking his probation for a nonwillful probation violation. Second, he argues that the district court abused its discretion by executing his suspended sentence without any reduction.

### A.    Probation Revocation

Gentry contends the district court abused its discretion by revoking his probation. Specifically, Gentry asserts that his probation violation was not willful and, therefore, the district court lacked the authority to revoke probation under Idaho Criminal Rule 33(e). The State argues that Rule 33(e) conflicts with the district court's authority as set out in Idaho Code §§ 19-2602, 19-2603, and 20-222. Because the conflict is substantive, according to the State, the statutes prevail over Rule 33(e). Gentry replies that the rule and statutes can be read together to avoid a conflict.

5

We conclude that we do not need to address the argument that the Supreme Court rule conflicts with the legislative enactment. It is apparent from the record that at the November 2012 hearing, the district court attempted to accommodate Gentry so that he could complete an interstate compact transfer to North Carolina. The district court did this by placing Gentry back on probation and imposing a fundamental condition of probation. The fundamental condition required that Gentry receive an interstate compact transfer to North Carolina. There were many variables outside Gentry's control in the interstate compact transfer process: the state parole office could have decided that Gentry's request was not viable; the Idaho office that handles interstate compact requests could have determined that the reason for the transfer or the plan was not viable; the receiving state's office that handles interstate compact requests could have not accepted the transfer request. What is more, additional hurdles, such as an aunt that was not willing to support Gentry, could have also dashed Gentry's plan for an interstate compact transfer, as it did in this case. This is why the district court specifically announced at the November 2012 hearing and in the written order that Gentry would appear before the court again for a different disposition if the interstate compact transfer, a fundamental condition of probation, did not go through.

When Gentry's counsel appeared before the district court in January 2013, after an order to show cause was filed, Gentry's counsel plainly acknowledged that the interstate compact transfer would not succeed. At this point, Gentry had conceded that a fundamental condition of his probation could not be completed. "After sound determination that a probationer could not possibly perform a fundamental condition of his probation, the judge has discretion to remove probation and pronounce sentence." *State v. Oyler*, 92 Idaho 43, 47, 436 P.2d 709, 713 (1968).

At the last hearing on the probation violation, Gentry's counsel acknowledged that two different interstate compacts were not successful and also stated that Gentry "himself worries about his ability to be successful in Pocatello." Gentry's counsel proposed that Gentry be permitted work release or work search in Pocatello. The State disagreed with Gentry's recommendation and argued that the court revoke probation. The court also heard from Gentry, and Gentry explained why he sought work release. It is apparent from the transcript that the district court considered the work release or work search option submitted by Gentry. This option was found inadequate to serve the State's legitimate interest in punishment, deterrence, and the protection of society, as Gentry had already violated probation once in this case and

informed the court on numerous occasions that he did not want to remain in Pocatello. Moreover, the option was also inadequate for Gentry to succeed, according to the court:

> Maybe you've made the changes you're telling me about here in open court, but the strongest thing I've heard is what you told me last time. And that is you will not succeed in Pocatello. I want you to prove to me you can succeed in a confined environment of a rider program, and then we'll talk about probation.

Because the district court considered the work release or work search option submitted by Gentry and found that the option was inadequate, and had on previous occasions attempted other alternatives sought by Gentry, we cannot say that the district court abused its discretion when it revoked Gentry's probation.

## B.    Sentence Reduction

Gentry argues that the district court abused its discretion by executing Gentry's suspended sentence without any reduction. After a probation violation has been established, the court may order that the suspended sentence be executed or, in the alternative, the court is authorized under Idaho Criminal Rule 35 to reduce the sentence. *State v. Beckett*, 122 Idaho 324, 325, 834 P.2d 326, 327 (Ct. App. 1992); *State v. Marks*, 116 Idaho 976, 977, 783 P.2d 315, 316 (Ct. App. 1989). A court's decision not to reduce a sentence after revoking probation will be disturbed on appeal only upon a showing that the trial court abused its discretion. *State v. Hanington*, 148 Idaho 26, 28, 218 P.3d 5, 7 (Ct. App. 2009); *Marks*, 116 Idaho at 978, 783 P.2d at 317.

Sentencing is also a matter for the trial court's discretion. Both our standard of review and the factors to be considered in evaluating the reasonableness of a sentence are well established and need not be repeated here. *See State v. Hernandez*, 121 Idaho 114, 117-18, 822 P.2d 1011, 1014-15 (Ct. App. 1991); *State v. Lopez*, 106 Idaho 447, 449-51, 680 P.2d 869, 871-73 (Ct. App. 1984); *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App. 1982). When reviewing the length of a sentence, we consider the defendant's entire sentence. *State v. Oliver*, 144 Idaho 722, 726, 170 P.3d 387, 391 (2007).

When we review a sentence that is ordered into execution following a period of probation, we examine the entire record encompassing events before and after the original judgment. *Hanington*, 148 Idaho at 29, 218 P.3d at 8. We base our review upon the facts existing when the sentence was imposed as well as events occurring between the original sentencing and the revocation of the probation. *Id.* Applying the foregoing standards, and

having reviewed the record in this case, we cannot say that the district court abused its discretion by ordering execution of Gentry's suspended sentence without reduction.

## III.

## CONCLUSION

We conclude that the district court did not abuse its discretion by revoking Gentry's probation. Additionally, we conclude that the district court did not abuse its discretion by executing Gentry's suspended sentence without reduction. For these reasons, we affirm the district court's order revoking Gentry's probation and executing Gentry's suspended sentence.

Judge GRATTON and Judge MELANSON **CONCUR.**