## IN THE COURT OF APPEALS OF THE STATE OF IDAHO

### Docket No. 50881

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) Filed: October 2, 2025 |
| Plaintiff-Respondent, | ) |
| | ) Melanie Gagnepain, Clerk |
| v. | ) |
| | ) THIS IS AN UNPUBLISHED |
| TIMMOTHY DREW MORGAN, | ) OPINION AND SHALL NOT |
| | ) BE CITED AS AUTHORITY |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Nancy A. Baskin, District Judge.

Judgment of conviction and sentence for second degree murder with a firearm enhancement, <u>affirmed</u>; order denying Idaho Criminal Rule 35 motion, <u>affirmed</u>.

Erik R. Lehtinen, State Appellate Public Defender; Elizabeth A. Allred, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; John C. McKinney, Deputy Attorney General, Boise, for respondent.

---

GRATTON, Chief Judge

Timmothy Drew Morgan appeals from his judgment of conviction for second degree murder with a firearm enhancement. Specifically, Morgan asserts the district court erred by denying his motion to suppress, abused its discretion by imposing an excessive sentence, and by denying his Idaho Criminal Rule 35 motion for a reduction of sentence. We affirm.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

In September 2021, Boise Police officers heard multiple gunshots in downtown Boise. Officers found a male, Lamont Rogers, on the ground, who had been shot multiple times and pronounced dead at the scene. Police contacted Morgan at his residence. Morgan agreed to an

1

interview with Detective Jagosh. After being advised of his rights pursuant to *Miranda*,[1] Morgan admitted to driving to a nightclub near the crime scene and shooting an unknown male. Morgan stated that he fired the weapon in self-defense after being punched in the head by the male and/or his associates. Morgan recounted that one of the individuals asked, "Do you want to run a fade?" a phrase Morgan interpreted as a challenge to fight. Morgan stated that he then fled the scene on foot through an alley, during which he claimed the firearm fell from his pocket at an unknown location.

Morgan was subsequently charged with second degree murder, Idaho Code § 18-4003(g), and with using a firearm in the commission of a felony, I.C. § 19-2520. Morgan filed a motion to suppress in which he alleged that his confession was involuntary due to his youth, education, lack of sleep, and because of Detective Jagosh's misstatement of the law. The district court held a suppression hearing at which Detective Jagosh testified, and a video recording of Morgan's interview was admitted. The district court subsequently denied the motion to suppress.

At trial, portions of the recorded interview were admitted. The jury convicted Morgan of second degree murder and of using a deadly weapon during the commission of a crime. The district court sentenced Morgan to a unified term of life with twenty-five years determinate. Morgan subsequently filed an I.C.R. 35 motion which the district court denied. Morgan appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

---

[1]     *See Miranda v. Arizona*, 384 U.S. 436 (1966).

2

## III.

## ANALYSIS

Morgan claims the district court erred in denying his motion to suppress. Morgan also argues the district court abused its sentencing discretion by imposing an excessive sentence, especially in light of the district court's erroneous belief that second degree murder required a mandatory minimum sentence. Finally, Morgan contends the district court abused its discretion in denying his I.C.R. 35 motion.

### A. Motion to Suppress

Morgan argues that the district court erred when it denied his motion to suppress statements made during his interview with Detective Jagosh, contending his will was overborne due to his relatively young age, education, and his lack of sleep. Morgan also argues that the detective's comment about three hours into the interview--"In order for this to have a shred of hope for you, for self-defense, you have to work with us"--was a misstatement of law because it indicated to Morgan that he could not present a claim of self-defense unless he cooperated with the detective. Morgan asserts that such alleged misstatement of law, combined with his youth, education, and lack of sleep, made the interrogation so coercive that his subsequent statements were involuntary.

### 1. Coercive circumstances

Morgan contends that his statements during the police interview were involuntary and should be suppressed under the totality of the circumstances. Morgan argues that his youthful age, education level, and lack of sleep rendered his statements involuntary. When a defendant alleges an interrogation to be coercive, the State bears the burden of proving voluntariness of the defendant's confession by a preponderance of the evidence. *State v. Yager*, 139 Idaho 680, 685, 85 P.3d 656, 661 (2004). To determine the voluntariness of a statement, courts examine the totality of the circumstances to determine whether the defendant's will was overborne. *Id.* The factors to be considered in determining whether a confession was voluntary include: (1) whether *Miranda* warnings were given; (2) the youth of the accused; (3) the accused's level of education or low intelligence; (4) the length of detention; (5) the repeated and prolonged nature of the questioning; and (6) deprivation of food or sleep. *State v. Andersen*, 164 Idaho 309, 314, 429 P.3d 850, 855 (2018).

The district court found no reason to weigh Morgan's age and education level in favor of suppression. At the time of the interrogation, Morgan was twenty years old and had completed

high school. Idaho appellate courts have upheld the voluntariness of confessions made by defendants significantly younger and with less education. *See State v. Samuel*, 165 Idaho 746, 452 P.3d 768 (2019) (fourteen year old's confession deemed voluntary); *State v. Doe*, 137 Idaho 519, 50 P.3d 1014 (2002) (twelve year old's waiver of *Miranda* rights upheld). There is no indication from the interview video or the record that Morgan's statements during the interview were the product of youthfulness or low intelligence, nor did Detective Jagosh observe any such limitations.

The district court found that Morgan's lack of sleep weighed only slightly in favor of suppression. While Morgan had less than a normal amount of sleep and was admittedly tired due to being out late the previous night, this factor alone does not render his statements involuntary. Morgan arrived at the police station at approximately 7:40 a.m., the interrogation began shortly after 8:00 a.m. and ended at approximately 12:00 noon. Morgan acknowledged he was tired but remained alert and responsive throughout the interview and repeatedly indicated he was willing to proceed. Morgan confessed to the shooting within the first thirty minutes of questioning. At no point did Morgan request to stop or delay the questioning. The district court found that, considering Morgan's demeanor and answers during the interview, his lack of sleep did not demonstrate that his statements were involuntary. The Idaho Supreme Court has found confessions to be voluntary in similar circumstances. *See Doe*, 137 Idaho at 524, 50 P.3d at 1019 (interrogation of a minor beginning at 3:40 a.m. after being awake since the previous morning found not coercive).

In evaluating the totality of the circumstances, including Morgan's age, education, physical condition, and his conduct and answers during the interview, the district court determined that Morgan's statements were not involuntary. We agree. Although Morgan was somewhat fatigued, the interview was not unduly long or aggressive, and his mental faculties appeared unimpaired. *Miranda* warnings were properly given, and Morgan indicated his understanding and willingness to speak. These factors support a conclusion that his will was not overborne.

### 2. Self-defense statement

Morgan argues that even if his youth, education level, and tiredness did not render his statements involuntary, his statements following Detective Jagosh's statement that "In order for this to have a shred of hope for you, for self-defense, you gotta work with us" were rendered involuntary by this misstatement of the law. Morgan contends that Detective Jagosh's statement suggested that Morgan "had to work with the police" in order to assert a self-defense claim, which

4

is a misstatement of the law. Morgan relies on this statement and other statements made by Detective Jagosh, which were not expressly claimed to be misstatements in the district court, to argue that Detective Jagosh coercively implied that the only way Morgan's actions could be self-defense was if he cooperated with the police--a legal fallacy that served to overbear his will. However, the detective never told Morgan that unless he worked with the police, he would not be legally entitled to raise a claim of self-defense. Rather, as the district court held, Detective Jagosh was merely communicating that he did not find Morgan's self-defense assertions to be credible and was encouraging Morgan to share more facts that could substantiate the defense.

Morgan analogizes his situation to the coercive statements addressed in *State v. Valero*, 153 Idaho 910, 914, 285 P.3d 1014, 1018 (Ct. App. 2012). In *Valero*, the detective misrepresented the admissibility of polygraphs in suggesting that Valero was lying and that he could be charged with the purportedly more serious crime of lying to the police if he did not confess. The misstatement created a false choice in order to coerce the confession. In determining that Valero's statements were involuntary, this Court stated that, deceptive police practices do not necessarily create coercion which would render a suspect's subsequent confession involuntary and excludable. *Id.* at 912, 285 P.3d at 1016. In addition, courts have accepted the police tactic of misrepresenting facts, and the confessions derived during interrogations have been upheld as voluntary, unless police misrepresent the law. *Id.* at 913, 285 P.3d at 1017. *Valero* is distinguishable. In this case, Detective Jagosh's comment is not a misstatement of law but rather a general appeal for cooperation. The context demonstrates that Detective Jagosh was expressing skepticism of Morgan's self-defense claim and encouraging him to provide additional facts to support that theory. There is no indication that Detective Jagosh was suggesting that Morgan's legal ability to assert self-defense was contingent on cooperating with police.

Detective Jagosh's comment, when placed in context, did not constitute a misstatement of law, or coercive tactic, and did not materially influence Morgan's decision to speak. The district court did not err in determining that Morgan's will was not overborne and that his statements were the product of a voluntary and knowing waiver of his rights. Morgan has shown no error in the district court's denial of his motion to suppress.

## B. Sentencing

Next, Morgan contends that the district court abused its discretion by sentencing him to twenty-five years to life because the district court mistakenly believed that it was required to

impose a ten-year mandatory minimum sentence for second degree murder, and considering the evidence and mitigating factors, the sentence is unreasonable.

### 1. Determinate sentence (mandatory minimum)

Morgan was convicted of second degree murder in violation of I.C. § 18-4001. Pursuant to I.C. § 18-4004, second degree murder is punishable by a term of imprisonment "not less than ten (10) years" and potentially extending to life. The ten-year statutory minimum refers to the indeterminate portion of the sentence and does not impose a mandatory minimum determinate term. *See State v. Burdett*, 134 Idaho 271, 276, 1 P.3d 299, 304 (Ct. App. 2000); *State v. Whiteley*, 132 Idaho 678, 679, 978 P.2d 238, 239 (Ct. App. 1999). The jury also found Morgan guilty of using a firearm in the commission of the murder as charged in Count II. Idaho Code § 19-2520 provides that, for any person convicted of a felony and found to have used a firearm in its commission, the court may increase the maximum sentence by up to fifteen years. This enhancement provision does not require that any portion of the enhancement be applied to the determinate term of a sentence.

Morgan contends it is possible that the district court also believed it was required to impose the fifteen-year enhancement to the determinate portion of the sentence. The district court stated:

> [T]he Court is going to sentence you to 25 years fixed plus indeterminate life sentence on Count I.
>
> Count II is arguably included in my sentence. In one way, you could consider that the minimum term of second-degree murder has been enhanced by 15 years for the fixed portion of the sentence. But, again, I'm not going above the maximum, which is a life sentence.

Morgan argues that the district court may have misunderstood the sentencing statutes. Specifically, Morgan claims the court erroneously believed that it was required to impose a minimum sentence of ten years for the second degree murder conviction despite I.C. § 18-4004 not mandating a determinate minimum term. However, the sentencing transcript reflects that the district court did not conflate the ten-year minimum with a determinate sentencing requirement. Rather, the court's reference to the "minimum term" appears consistent with the case law interpreting I.C. § 18-4004 as requiring a ten-year indeterminate minimum only. *See Burdett*, 134 Idaho at 276, 1 P.3d at 304; *Whiteley*, 132 Idaho at 679, 978 P.2d at 239. Further, the context does not support Morgan's claim.

Although the district court noted that "in one way, you could consider that the minimum term of second-degree murder has been enhanced by 15 years for the fixed portion of the sentence,"

this comment is best understood as a description of the court's rationale rather than a legal conclusion regarding sentencing requirements. Before this comment by the district court, it had already imposed an indeterminate life sentence with a twenty-five year determinate sentence for second degree murder. The district court explained, in effect, that it arrived at the determinate portion of Morgan's sentence by choosing to use, as a guide, the ten-year minimum (indeterminate) term for second degree murder, and the fifteen-year (indeterminate) firearm enhancement. The court did not say that either of those provisions were required to be applied to the determinate portion of the sentence. That the district court referred to the two indeterminate provisions and determinate portion in the same sentence does not mean that the court believed that either provision constituted a mandatory determinate term requirement.

### 2. Excessive sentence

Morgan was found guilty of second degree murder, I.C. § 18-4003(g) with an enhancement for use of a deadly weapon in commission of a felony, I.C. § 19-2520. The district court imposed a unified sentence of life, with twenty-five years determinate. Morgan contends that based on the mitigating factors of his young age, support of family and friends, difficult childhood, substance abuse and desire for treatment, mental illness, and remorse, his sentence is excessive.

Sentencing is a matter for the trial court's discretion. Both our standard of review and the factors to be considered in evaluating the reasonableness of the sentence are well established and need not be repeated here. *See State v. Hernandez*, 121 Idaho 114, 117-18, 822 P.2d 1011, 1014-15 (Ct. App. 1991); *State v. Lopez*, 106 Idaho 447, 449-51, 680 P.2d 869, 871-73 (Ct. App. 1984); *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App. 1982). When reviewing the length of a sentence, we consider the defendant's entire sentence. *State v. Oliver*, 144 Idaho 722, 726, 170 P.3d 387, 391 (2007). Our role is limited to determining whether reasonable minds could reach the same conclusion as the district court. *State v. Biggs*, 168 Idaho 112, 116, 480 P.3d 150, 154 (Ct. App. 2020). Applying these standards, and having reviewed the record in this case, we cannot say that the district court abused its discretion.

### C. Rule 35 Motion

Morgan claims that the district court erred in denying his I.C.R. 35 motion in light of the new and additional information he provided in support. A motion for reduction of sentence under Rule 35 is essentially a plea for leniency, addressed to the sound discretion of the court. *State v. Knighton*, 143 Idaho 318, 319, 144 P.3d 23, 24 (2006); *State v. Allbee*, 115 Idaho 845, 846, 771

P.2d 66, 67 (Ct. App. 1989).  In presenting a Rule 35 motion, the defendant must show that the sentence is excessive considering new or additional information subsequently provided to the district court in support of the motion. *State v. Huffman*, 144 Idaho 201, 203, 159 P.3d 838, 840 (2007).  Upon review of the record, including any new information submitted with Morgan's Rule 35 motion, we conclude no abuse of discretion has been shown.

## IV.
## CONCLUSION

The district court did not err in denying Morgan's motion to suppress.  Additionally, the district court did not abuse its discretion in imposing sentence or by denying Morgan's Rule 35 motion for a reduction of sentence.  Accordingly, the district court's judgment of conviction and sentence and order denying Morgan's Rule 35 motion are affirmed.

Judge LORELLO and Judge TRIBE **CONCUR**.