1 P.3d 299

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Jason BURDETT, Defendant–Appellant.**

No. 25330.

Court of Appeals of Idaho.

March 8, 2000.

Review Denied June 9, 2000.

Ronaldo A. Coulter, Appellate Public Defender, Boise, for appellant.

Hon. Alan G. Lance, Attorney General; Myrna A.I. Stahman, Deputy Attorney General, Boise, for respondent. Myrna A.I. Stahman argued.

PERRY, Chief Judge.

Jason Burdett appeals from a judgment of conviction and fixed life sentence imposed pursuant to his plea of guilty to second degree murder. I.C. § 18-4003(g). Burdett also appeals from the denial of his I.C.R. 35 motion. For the reasons set forth below, we affirm.

## I.

## BACKGROUND

In the early morning hours of September 10, 1996, Burdett called 911 because Brooks Comfort, the twenty-month-old son of his girlfriend, was not breathing. An Elmore County ambulance was dispatched. Upon arriving at the scene, an emergency medical technician (EMT) entered the residence and observed that Brooks was not breathing, his lips were blue, he had no pulse, and no CPR was being performed. Mouth-to-mouth resuscitation was started. The infant was transported to the awaiting ambulance where CPR was continued. In the ambulance, the EMT noticed a "clear to gray substance" in the infant's mouth. Upon arriving at the hospital, an emergency room physician assumed care of Brooks. Resuscitative efforts failed and Brooks was pronounced dead approximately forty-five minutes after arriving at the hospital.

Eventually, Burdett was charged with first degree murder for the infant's death. Pursuant to a plea agreement, Burdett pled guilty to second degree murder. The district court ordered that a presentence investigation report (PSI) be prepared. The PSI contained a statement from the EMT that the substance she removed from the infant's mouth was semen.[1] Burdett moved to strike the EMT's statement from the PSI and for preparation of a new report. The district court conditionally denied the motion, ruling that the information would not be stricken provided the EMT testified at the sentencing hearing. The district court also indicated that it would give such testimony the weight it deemed appropriate.

At the sentencing hearing, the EMT gave testimony relating to her opinion on this issue, subject to cross-examination. After considering the EMT's testimony, the PSI, and the evidence presented, the district court sentenced Burdett to a fixed life term. Burdett filed an I.C.R. 35 motion seeking reduc-

---

1. We recognize that the EMT referred to the substance as "sperm." However, we will refer to the substance as semen throughout this opinion.

tion of his sentence, which the district court denied. Burdett appeals.

## II.

## ANALYSIS

### A. Sentence Review

#### 1. EMT's testimony

Burdett contends that the district court abused its discretion when it considered the EMT's testimony in formulating Burdett's sentence. Burdett also argues that the EMT's statement contained in the PSI should have been stricken, asserting that it was speculative and that there was no reasonable basis for its consideration.

The district court has broad discretion in determining what evidence is to be admitted at a sentencing hearing. *State v. Viehweg*, 127 Idaho 87, 92, 896 P.2d 995, 1000 (Ct.App.1995). It is well settled that hearsay information believed to be reliable may be set forth in a presentence report, so long as the defendant is afforded an opportunity to present favorable evidence and to explain or rebut the adverse information. *State v. Rodriguez*, 132 Idaho 261, 263, 971 P.2d 327, 329 (Ct.App.1998). However, hearsay information must be disregarded if there is no reasonable basis to deem it reliable, as where the information is simply conjecture. *Id.* A defendant is entitled to challenge the reliability of the hearsay information contained in a presentence report and to bring to the court's attention matters contained in the report which the defendant believes to be inaccurate. *State v. Johnson*, 101 Idaho 581, 583, 618 P.2d 759, 761 (1980).

Prior to the sentencing hearing, Burdett moved to have the EMT's statement stricken from the PSI. Burdett argued that there was no reasonable basis to deem the information contained in the statement reliable. The district court denied that motion, ruling that as long as the EMT "testifies at the sentencing hearing, then I will not strike the information in the presentence report. I will base it on whatever her testimony is and give it the weight that I deem I need to give it."

Initially we note that the decision to admit lay opinion testimony is discretionary with the trial court. *State v. Enyeart*, 123 Idaho 452, 454, 849 P.2d 125, 127 (Ct.App. 1993). At sentencing, the EMT's testimony mirrored her statement to the presentence investigator. Additionally, the EMT testified as to the basis of her opinion, and Burdett exercised his opportunity to cross-examine her at length. During cross-examination, Burdett challenged the EMT's credibility as well as the reliability of the information she presented.

During appellate oral argument, counsel for Burdett indicated that the EMT waited until approximately two years after the incident to tell anyone that the substance in the infant's mouth was, in her opinion, semen. Burdett contends that the district court gave improper weight to the EMT's testimony. However, the EMT testified at the sentencing hearing that she had given a statement in the emergency room that the substance was semen. The EMT also testified that she told the hospital employees to save the substance suctioned from the infant's mouth, as well as the sheet from the ambulance on which she wiped the substance after removing it from the infant's mouth. The EMT also stated that she informed the former prosecuting attorney about her opinion regarding the substance when she was interviewed on the day following the murder. The district court found that the EMT was a credible witness.

The EMT also testified regarding the presence of a pubic hair discovered in the infant's diaper upon arrival at the hospital. A report, compiled by Pamela Marcum, a criminalist employed by the Idaho Bureau of Forensic Services, was admitted into evidence by Burdett. Burdett contends that, because the source of the pubic hair was never established, any inference by the EMT was inadmissible. However, Marcum's report stated that the unknown pubic hair was "similar to Jason Burdett's pubic hair." Thus, the district court properly considered this testimony.

The criminalist's report also stated that no semen was found upon analysis of the "sex kit" performed on Brooks. Burdett called

Thomas Barry, Mountain Home Police Chief, to testify. Barry stated that he routinely relied on the reports prepared by the Idaho Bureau of Forensic Services. Chief Barry further testified that, based the report and his investigation, he did not believe that semen was in the infant's mouth.

On appeal, we presume that a sentencing court is able to ascertain the relevancy and reliability of the broad range of information and material which is presented to it during the sentencing process, to disregard the irrelevant and unreliable evidence, and to properly weigh the remaining evidence which may be in conflict. *State v. Campbell,* 123 Idaho 922, 926, 854 P.2d 265, 269 (Ct.App. 1993). The district court weighed the conflicting evidence and found the EMT's testimony reliable. We hold that the district court's consideration of the EMT's allegations submitted through the PSI and her testimony was proper.

Finally, Burdett appears to assert that the EMT's statements were "extremely prejudicial" and "had minimal probative value" and, thus, should not have been considered by the district court. As stated above, the district court weighed the evidence presented and found the EMT's testimony was sufficiently reliable to consider. Therefore, the district court appropriately considered this evidence prior to imposing sentence.

## 2. Abuse of discretion

Burdett also argues that the district court abused its discretion when it imposed a fixed-life sentence upon his guilty plea to second degree murder. An appellate review of a sentence is based on an abuse of discretion standard. *State v. Wolfe,* 99 Idaho 382, 582 P.2d 728 (1978). Where a sentence is not illegal, the appellant has the burden to show that it is unreasonable, and thus a clear abuse of discretion. *State v. Brown,* 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence may represent such an abuse of discretion if it is shown to be unreasonable upon the facts of the case. *State v. Nice,* 103 Idaho 89, 645 P.2d 323 (1982). A sentence of confinement is reasonable if it appears at the time of sentencing that confinement is necessary "to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case." *State v. Toohill,* 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App.1982). Where an appellant contends that the sentencing court imposed an excessively harsh sentence we conduct an independent review of the record, having regard for the nature of the offense, the character of the offender and the protection of the public interest. *State v. Reinke,* 103 Idaho 771, 653 P.2d 1183 (Ct.App.1982).

As punishment for second degree murder, the accused may be sentenced to a life term in the custody of the Board of Correction. At a minimum, however, the district court must impose an indeterminate term of at least ten years. I.C. § 18-4004; *State v. Whiteley,* 132 Idaho 678, 679, 978 P.2d 238, 239 (Ct.App.1999). The decision as to whether the sentence will be some indeterminate term with the possibility of parole after ten years, or will be some longer period of incarceration without the possibility of parole, extending to life, is a matter within the trial court's discretion. *Whiteley,* 132 Idaho at 679-80, 978 P.2d at 239-40. The Idaho Supreme Court has stated that "a fixed life sentence is appropriate if necessary to protect society, to deter the individual and the public, if rehabilitation is unlikely, or if the behavior giving rise to the crime was so egregious that a determinate life sentence is necessary for proper punishment or retribution." *State v. Jackson,* 130 Idaho 293, 295, 939 P.2d 1372, 1374 (1997).

### a. Nature of the offense

This case presents the senseless and brutal murder of a twenty-month-old infant. The known facts before this Court surrounding the murder are minimal, due in most part to Burdett's own conduct. Burdett has failed to include the transcript from his change of plea hearing wherein, according to the district court minutes, he was examined by the court regarding his guilty plea. Portions of a transcript missing on appeal are presumed to support the actions of the district court. *State v. Repici,* 122 Idaho 538, 541, 835 P.2d 1349, 1352 (Ct.App. 1992). Additionally, Burdett, on the advice

of counsel, refused to discuss the details of the crime with the presentence investigator.

Burdett was entrusted with the care of Brooks. On the date of the homicide, Burdett gave a statement to the police wherein he indicated that he checked on Brooks and noticed that he was not breathing and that his lips were blue. Burdett stated that he checked for a pulse and, finding none, took Brooks to a neighbor's house and called 911. Approximately one month after Brooks's death, however, Burdett gave another statement to the police wherein he admitted pushing the infant "down too hard" and, as a result, Brooks "hit his head on the wall." Burdett pushed Brooks down because he was "whiny." Eventually, Burdett pled guilty to second degree murder. According to the police reports included in the record on appeal, there was a "gash in the wall with hairs stuck in it" at the murder scene. The district court found, based on the entire record before it, that Burdett "pick[ed] up Brooks and slam[ed] his head against the wall with sufficient force, not only to kill [him], but to knock a hole in the wall." Burdett does not challenge this factual finding on appeal.

Additionally, the autopsy performed on the infant revealed the presence of a subarachnoid hemorrhage, which would require a "forceful event," as well as areas of hemorrhage within the spinal cord "consistent with a recent severe trauma." There was also another recent hemorrhage within the spinal cord that was "additional evidence of a forceful external trauma." Finally, there were lacerations of the lower lip discovered that also required a "reasonably forceful traumatic event."

Furthermore, the testimony elicited during the sentencing hearing also revealed that Brooks was sexually assaulted by Burdett. As stated above, the EMT's testimony, which the district court credited, indicated that there was semen in the infant's mouth. Additionally, a pubic hair was discovered in the infant's diaper at the hospital. After analysis, the pubic hair was determined to have been similar to Burdett's pubic hair.

Finally, there was evidence presented to the district court that Burdett had subjected Brooks to physical and psychological abuse in the months leading up to his death. In the PSI, Burdett's mother stated that Burdett would get upset and call Brooks "a little shit, a pain in the ass, and would be very loudly verbal to him." During the sentencing hearing, Brooks's mother testified that, after Burdett moved into her home, she noticed "many bruises" that were not present before Burdett moved in. Brooks's mother also testified that, after Burdett moved into the home, the infant started regressing insofar as he no longer spoke words that he had spoken previously. Additionally, on more than one occasion, when Brooks cried and would not go to sleep, Burdett stated, "if you take a bat and hit a dog on the head it will just pass out and go to sleep and wake up and be fine."

Based on the foregoing, the district court concluded that the circumstances surrounding the murder were so egregious that a determinate life sentence was necessary both to properly punish Burdett and to obtain retribution for this heinous crime. Burdett has failed to show that the district court abused it discretion in that regard.

### b. Character of the offender

As stated above, in determining whether a sentence represents an abuse of discretion, this Court also looks at the character of the offender. In this case, the PSI reveals that Burdett has an extensive history of violence. Burdett was eighteen years old at the time of the murder and was twenty years old at the time of sentencing. The presentence investigator interviewed Burdett's mother who stated that while living in North Dakota, Burdett was admitted to the "Boys Ranch" and was subsequently placed at the "Gillifilian Youth Center" in Minnesota. According to Burdett's mother, after the family moved to Idaho and when Burdett was approximately eight years old, he "came after her with a butcher knife." On another occasion some years later, Burdett tried to strangle her.

In 1992, a social worker from the Department of Health and Welfare submitted a report to the court under the Youth Rehabilitation Act. According to that report, the social worker had interviewed Burdett's mother and sister. During that interview, several

anger management issues were identified in the Burdett household, including daily arguments which occurred between Burdett and his mother. At times during these arguments, Burdett pushed his mother against the furniture, the wall, or other objects. On more than one occasion, Burdett put his hands around his mother's throat and either attempted or threatened to choke her. Furthermore, during some of these arguments, Burdett threatened to kill his mother. Burdett's sister also stated that he had placed his hands on her throat and picked her up off the floor. Finally, on occasion, when Burdett became angry, he also punched holes in the walls of the home. Burdett was found to be within the purview of the Youth Rehabilitation Act, was committed to the custody of the Department of Health and Welfare, and was placed in a community-based treatment program.

In 1994, the social worker submitted an additional report. According to that report, Burdett had been expelled from the community-based program due to frequent, aggressive remarks. Additionally, while in the program, Burdett was involved in physical and verbal altercations with the staff. Based on his actions, Burdett was charged with, and admitted to, one count of assault. Burdett was subsequently placed in a group home. While at the group home, Burdett was verbally abusive, aggressive, and inappropriate to staff, physically and verbally threatening them. Moreover, Burdett physically assaulted other residents and broke into a locked room by kicking in a boarded window. The social worker quoted excerpts from the final report from the group home indicating that there was a concern that Burdett was "beyond group and/or foster care and poses a threat to anyone who denies him or tells him no. . . . Again, we felt that [Burdett] requires a more stringent atmosphere and that he is a threat to society."

Thereafter, Burdett was placed in foster care. However, while in foster care, Burdett was involved in a physical confrontation with his foster mother. As a result, Burdett was charged with, and admitted to, disturbing the peace, and other charges were dismissed. Based on the foregoing, Burdett was placed at the Youth Services Center in St. Anthony. In the findings of fact, conclusions of law, and decree of the court placing Burdett at the Youth Services Center, the magistrate found that Burdett had been adjudicated on four prior felonies and three misdemeanors within the preceding twelve months. Thus, at the time of his commitment to the Youth Services Center, Burdett already had an extensive and serious criminal history.

While at the Youth Services Center, according to Burdett's mother, Burdett was prescribed medication for his "outbursts." Burdett was released from the Youth Services Center into the custody of his mother, but stayed at his grandmother's residence because he usually used his mother "for a target." Sometime prior to the homicide in this case, Burdett ceased taking his medication. Burdett's stated reason for ceasing to take his medication was "because of [the] use of methamphetamines." After ceasing to take his medication and during the time when Burdett was caring for Brooks, Burdett occasionally became so frustrated with the infant that he would take Brooks to his mother's residence. On one such occasion, Burdett became so verbally abusive that his mother asked that he leave, whereupon Burdett threw a chair, punched a hole in a shed door, and left.

 Burdett has been afforded many counseling opportunities for his anger. Following his release from the Youth Services Center he began seeing a psychiatrist in Boise, but stopped attending therapy because he did not like the doctor and did not like "downers." Additionally, Burdett's mother attempted to obtain counseling for Burdett and herself, but Burdett refused to attend. According to Burdett's mother, she had spent thousands of dollars trying to resolve Burdett's violent outbursts, but she never felt that there was any resolution. The presentence investigator was unable to obtain any confidential information regarding Burdett's therapy because Burdett failed to provide the investigator with a release of information request. Based on all of the foregoing, the district court determined that Burdett was not amenable to rehabilitation. This determination is supported by substan-

tial and competent evidence and, thus, it will not be set aside on appeal. *See State v. Tierney,* 109 Idaho 474, 476, 708 P.2d 879, 881 (1985).

### c. Protection of public interest

 The appellate courts of this state have noted that the seriousness of a homicide offense mandates a punishment in the form of a substantial prison sentence. *State v. Hooper,* 119 Idaho 606, 609, 809 P.2d 467, 470 (1991); *Whiteley,* 132 Idaho at 680, 978 P.2d at 240. A substantial sentence in this regard reflects society's condemnation of a defendant's conduct, deters other members of society from engaging in similar conduct, and protects society from future crime. *Hooper,* 119 Idaho at 609, 809 P.2d at 470. A sentence need not serve all the sentencing goals or weigh each one equally. *State v. Dushkin,* 124 Idaho 184, 186, 857 P.2d 663, 665 (Ct.App.1993). Indeed, the primary consideration in sentencing is, and presumptively always will be, the good order and protection of society. All other factors are, and must be, subservient to that end. *State v. Hunnel,* 125 Idaho 623, 873 P.2d 877 (1994); *State v. Pederson,* 124 Idaho 179, 857 P.2d 658 (Ct. App.1993).

The gravity of the offense in this case, as shown by the circumstances, is sufficiently egregious to justify a severe measure of retribution and deterrence. Moreover, given the numerous opportunities afforded Burdett insofar as management for his anger is concerned, the record indicates that Burdett is not presently amenable to such rehabilitation. Furthermore, although Burdett's anger appears to be controllable with medication, Burdett refused to continue taking such medication after being released from the Youth Services Center. Given Burdett's escalating pattern of violence, and his refusal to be rehabilitated, society must be protected from Burdett.

 The sentence imposed in this case is harsh; indeed, it is the maximum permissible sentence under the law. Upon review of a sentence, however, the issue before this Court is not whether the sentence is one that we would have imposed, but whether the sentence is plainly excessive under any reasonable view of the facts. *Toohill,* 103 Idaho at 568, 650 P.2d at 710. If reasonable minds might differ as to whether the sentence is excessive, we are not free to substitute our view for that of the district court. *Id.* Having thoroughly reviewed the record on appeal, we hold that the district court did not abuse its discretion in reaching the sentence imposed in this case.

### B. Rule 35

 Burdett contends that the district court erred when it denied his Rule 35 motion. A motion to reduce an otherwise lawful sentence under Rule 35 is addressed to the sound discretion of the trial court. *State v. Forde,* 113 Idaho 21, 740 P.2d 63 (Ct.App.1987). Such a motion is essentially a plea for leniency, which may be granted if the sentence originally imposed was unduly severe. *State v. Lopez,* 106 Idaho 447, 680 P.2d 869 (Ct.App.1984). The denial of a motion for reduction under Rule 35 will not be disturbed on appeal absent a showing that the court abused its sentencing discretion. *State v. Robertson,* 130 Idaho 287, 289, 939 P.2d 863, 865 (Ct.App.1997). The criteria for examining rulings denying the leniency requested are the same as those applied in determining whether the original sentence was unreasonable. *Lopez,* 106 Idaho at 450, 680 P.2d at 872. We have previously set forth the criteria for examining the original sentence above.

 If the sentence is not excessive when pronounced, the defendant must show that it is excessive in view of new or additional information presented with the motion for reduction. If the defendant fails to make this showing, we cannot say that denial of the motion by the district court represents an abuse of discretion. *State v. Hernandez,* 121 Idaho 114, 822 P.2d 1011 (Ct.App.1991). Burdett's original sentence was not excessive when it was imposed and, therefore, Burdett was required to present new or additional information in support of his plea for leniency. The state contends that, because none of the issues raised by Burdett on appeal from the denial of his Rule 35 motion were presented to the district court, this Court should affirm the district court's action.

As stated by the district court, the issue raised by Burdett in his Rule 35 motion was whether the district court's finding that Burdett sexually abused Brooks before murdering him was correct. The sole evidence presented by Burdett to the district court in support of the Rule 35 motion was an affidavit of Pamela Marcum. As noted above, Marcum was the criminalist employed by the state who tested the forensic evidence in this case, including the rape kit obtained from the infant at the hospital. Marcum averred that the determination or finding of semen in this case was difficult because the rape kit was incomplete. Marcum also stated that the evidence she received tested negative for a finding of semen. Regarding the contents of the rape kit, Marcum averred:

> Swabs had been taken from the mouth of the victim because smears were made; however, the swabs themselves were not left in the kit. I did find two swabs of unknown origin, i.e.; no identification was made as to what part of the body these swabs came from. I tested these swabs, and they were negative for semen. As my report shows, there was no finding of semen on the smears or on the swabs, which included oral and anal smears.

Marcum also stated that no semen was found in the victim's diaper. Finally, Marcum stated that "the tasting of unknown stains and fluids is not a scientifically acceptable means of identifying semen." Attached to Marcum's affidavit were several exhibits, including written reports regarding the analysis of evidence obtained by the police and the rape kit.

Upon consideration of Marcum's affidavit and the attachments thereto, the district court found that Marcum had no direct knowledge regarding where the samples in the rape kit were obtained and the record was silent as to where or when the samples were taken. Additionally, the district court found that Burdett had no explanation as to how a pubic hair, which was similar to Burdett's, was discovered in the victim's diaper. Furthermore, the district court noted that the victim would have voided upon death and, thus, the diaper apparently had been changed and the absence of semen in the clean diaper failed to show that the victim was not sexually abused prior to his death. Finally, the district court found the EMT's testimony credible. Therefore, the district court found that Burdett had failed to present information that would lead it to alter its finding that the infant was sexually abused at the time of the murder in this case. Thus, the district court refused to reduce the originally imposed sentence.

On appeal, Burdett contends that the district court erred in denying his Rule 35 motion considering his potential rehabilitation, age, remorse and willingness to participate in counseling. However, Burdett did not seek reduction of his sentence before the district court on any of these grounds. We note that the information relied upon by Burdett was before the district court when Burdett's sentence was originally imposed. As this Court has held above, the fixed life sentence was not excessive when it was originally imposed. Moreover, if Burdett had additional information regarding these factors, he failed to present it to the district court for consideration. Therefore, we hold that the district court did not abuse its discretion when it denied Burdett's Rule 35 motion for reduction of sentence.

### III.

### CONCLUSION

We hold that the district court properly considered the EMT's testimony in fashioning a sentence because the EMT testified at the sentencing hearing and was subjected to cross-examination. Additionally, we conclude that, considering the nature of the offense—second degree murder of an infant—Burdett's character and the protection of the public interest, the fixed life sentence originally imposed by the district court was not an abuse of discretion. Finally, we hold that the district court did not abuse its discretion when it denied Burdett's Rule 35 motion.

Therefore, Burdett's judgment of conviction and sentence of fixed life for second degree murder and the order denying his Rule 35 motion for reduction of sentence are affirmed.

Judge LANSING, and Judge SCHWARTZMAN, concur.