**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 38986**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2012 Unpublished Opinion No. 660** |
| | ) | |
| Plaintiff-Respondent, | ) | **Filed: October 3, 2012** |
| | ) | |
| v. | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **MAXIMILIANO RAUL SILEONI,** | ) | **THIS IS AN UNPUBLISHED** |
| | ) | **OPINION AND SHALL NOT** |
| Defendant-Appellant. | ) | **BE CITED AS AUTHORITY** |
| | ) | |

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. Renae J. Hoff, District Judge.

Judgment of conviction and unified sentence of twenty years, with ten years determinate, for battery with intent to commit a serious felony and possession of a deadly weapon during the commission of a crime, <u>affirmed</u>.

Nevin, Benjamin, McKay & Bartlett LLP, Boise, for appellant. Deborah Whipple argued.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

_____

SCHWARTZMAN, Judge Pro Tem

Maximiliano Raul Sileoni appeals from his judgment of conviction and sentence imposed following the entry of his guilty pleas to battery with intent to commit a serious felony (rape) and a sentencing enhancement of possession of a deadly weapon during the commission of a crime. Specifically, Sileoni asserts that the district court erred by failing to inquire as to the factual basis for Sileoni's guilty pleas and by imposing an excessive sentence. For the reasons stated below, we affirm.

**I.**

**FACTS AND PROCEDURE**

In January 2010, an eighteen-year-old female victim reported that a young adult male, later identified as Sileoni, had attacked her. When police arrived, she stated that Sileoni had come into her workplace, attempted to engage her in conversation, and asked to borrow her cell

phone.  After using the phone to make two calls, Sileoni grabbed the victim, displayed a pocket knife with the blade extended and grabbed scissors from the counter, which he held together with the pocket knife in one hand against her abdomen, and warned the victim not to yell.  The victim reported that Sileoni then proceeded to rub her breasts under her shirt and undergarment and attempted to kiss her.  The victim pushed him away, but he continued by unbuttoning her pants, putting his hand down her underwear, and roughly touching her vagina.  He also pulled her pants and underwear down to her knees and attempted to lay her on the ground.  The victim initially resisted, but then agreed to go with Sileoni to a back room, hoping she could attempt to escape or get help.  In pretending to agree to Sileoni's suggestion, she asked Sileoni to leave the knife and scissors behind.  As Sileoni put down the scissors and moved to put his knife into his pocket, the victim pulled up her pants and started screaming and pounding on the wall to attract help.  While she screamed for help, Sileoni hit her approximately six times in the face before he ran away. The victim reported that Sileoni did not remove his own pants during the encounter.  She was able to describe the knife as a small, silver pocket knife, roughly five to six inches long.  Police found a pocket knife, matching the victim's description, in an open position (blade extended) roughly a half-block away from the crime scene.  Police noted, after the initial interview, that the victim had physical marks and injuries consistent with her account of the crime.

The police contacted the person whom Sileoni had last called from the victim's cell phone and, in doing so, determined Sileoni's identity.  Police found and arrested Sileoni later that same day.  Though Sileoni cooperated and gave the police a statement, his version of events differed from that given by the victim.  Sileoni indicated that the victim looked at Sileoni in a way he described as "an attractive way as if she wanted something with me."  He stated that he and the victim had been talking, and when she gave him that look, he kissed her and touched her breast.  Sileoni stated he put his hand down her pants at first, but that she thereafter pulled her own pants down.  He did not know how his pocket knife fell out or how it ended up in his hand, but that she got scared and asked Sileoni to put it away.  Sileoni told her he was not going to do anything and did put the knife aside.  He said the victim had also laid on the ground with her pants down and asked him to touch her, but he suggested they go to a different room.  As relayed by Sileoni, it was then that the victim began screaming and that he picked up the knife and scissors.  To "bring her back to her senses," Sileoni slapped the victim approximately three times and, when she did not stop screaming, ran outside to his car and left.  He told the police that he

2

did not intend to have sex with the victim and denied having an erection during the encounter. He said he did not know exactly how things got out of control, but that he had recently experienced emotional turmoil and was just coming off of alcohol and marijuana when he encountered the victim. He indicated he wanted to take responsibility for his actions--that he knew he had done something wrong and wanted some help--but he partially blamed the victim for what had happened. He stated that he did not force the victim or try to violate her, he believed she did not tell the police everything that happened, and that she had a different role in the events than what she stated. Sileoni confirmed that the pocket knife police had recovered was his.

The State charged Sileoni with first degree kidnapping, battery with the intent to commit a serious felony (rape), and a sentencing enhancement of possession of a deadly weapon during the commission of a crime. Pursuant to a plea agreement, the State moved to dismiss the kidnapping charge and Sileoni entered guilty pleas to the battery charge and the sentencing enhancement. After accepting the guilty pleas, the district court ordered a psychosexual evaluation and a presentence investigation (PSI) report for the scheduled sentencing hearing. At the sentencing hearing, Sileoni requested an interpreter, which was provided. From Sileoni's need for an interpreter at sentencing, the court determined that Sileoni had experienced difficulty in speaking with the presentence investigator because the investigator did not speak Spanish and there was no interpreter during the interview. Instead of proceeding with sentencing, the district court again advised Sileoni, this time with the aid of an interpreter, of the rights he was waiving by pleading guilty and again took his guilty pleas to battery with the intent to commit rape, Idaho Code §§ 18-903(b), 18-911, and the sentencing enhancement of possession of a deadly weapon during the commission of a crime, Idaho Code § 19-2520. The district court also ordered an updated PSI to be conducted with an interpreter and a new psychosexual evaluation with a Spanish-speaking evaluator. At the rescheduled sentencing hearing, the district court imposed a unified sentence of twenty years, with ten years determinate, and ordered Sileoni to pay a $5,000 civil penalty and restitution. Sileoni timely appeals, asserting the district court erred by failing to inquire as to the factual basis for his guilty pleas and by imposing an excessive sentence.

3

## II.

## ANALYSIS

**A.    Failure to Inquire as to the Factual Basis for Entry of Guilty Pleas**

Sileoni argues that the district court has an obligation to sua sponte inquire into the factual basis for a plea if, after the plea is entered and a sentence has not been imposed, the court receives information raising an obvious doubt as to whether the defendant is guilty, and that, before sentencing, both the language barrier that became apparent and the information in the PSI report about Sileoni's lack of intent to commit rape raised obvious doubt as to his guilt. Sileoni further claims that the district court's failure to conduct a sua sponte inquiry into the factual basis of a guilty plea is analogous to a failure to sua sponte order a competency evaluation under Idaho Code § 18-211, reviewed under an abuse of discretion standard, and that under such standard of review, this Court should remand the case for the proper inquiry. The State responds that Sileoni's arguments have no merit for three reasons: (1) Sileoni did not enter an *Alford*[1] plea, meaning he admitted the State's charge and there was never a requirement to establish a factual basis independent of the guilty pleas; (2) the overwhelming evidence that Sileoni groped the victim's breasts and touched her vagina at knife-point was an adequate factual basis to support the charges; and (3) they are essentially arguments to withdraw his guilty pleas without showing fundamental error under *State v. Perry*, 150 Idaho 209, 245 P.3d 961 (2010).

Prefatorily, we need not determine the proper standard for review because we conclude that under *either* an abuse of discretion standard or fundamental error, Sileoni cannot show the district court erred. The district court meticulously advised and inquired of Sileoni when taking Sileoni's guilty pleas, the record clearly establishes a factual basis for the pleas, and the evidence Sileoni relies on does not raise an obvious doubt as to his guilt.

Courts are generally under no obligation to establish a factual basis prior to accepting a guilty plea. *State v. Coffin*, 104 Idaho 543, 545-56, 661 P.2d 328, 330-31 (1983). A guilty plea admits the essential elements of an indictment. *Lewis v. State*, 137 Idaho 882, 884, 55 P.3d 875, 877 (Ct. App. 2002); *State v. Byington*, 135 Idaho 621, 623, 21 P.3d 943, 945 (Ct. App. 2001). A voluntary, valid guilty plea is, therefore, conclusive as to guilt and obviates the necessity of

---

[1]    *See North Carolina v. Alford*, 400 U.S. 25 (1970).

the prosecution going forward with evidence. *State v. Hawkins*, 117 Idaho 285, 290, 787 P.2d 271, 276 (1990). However, there are exceptions to the general rule that no factual basis is required in order to accept a guilty plea: (1) when the defendant does not recall facts of the incident resulting in the charge; (2) when the defendant is unwilling or unable to admit participating in the acts constituting a crime; and (3) when the defendant couples the plea with continued assertions of innocence. *State v. Horkley*, 125 Idaho 860, 862, 876 P.2d 142, 144 (Ct. App. 1994). The court should also inquire as to the factual basis supporting the charge if after accepting a plea, but before sentencing, the court receives information raising an obvious doubt as to the defendant's guilt. *Id*. at 862-63, 876 P.2d at 144-45; *State v. Hoffman*, 108 Idaho 720, 722, 701 P.2d 668, 670 (Ct. App. 1985).

Sileoni asserts that both the lack of intent to have sexual intercourse, evidenced by statements in the police reports and presentence report, and the language barrier that became apparent at the hearing initially scheduled for sentencing, raised obvious doubts as to his guilt. If a defendant pleads guilty while denying a particular element of the offense, such as intent, the plea nevertheless may be accepted if there is a strong factual basis for it. *Hoffman*, 108 Idaho at 722, 701 P.2d at 670. A strong factual basis need not be established by proof beyond a reasonable doubt, as a guilty plea should not involve a mini-trial of the case; rather, the object of ascertaining a factual basis is to assure that the defendant's plea is made knowingly, intelligently, and voluntarily. *Id.*[2] A factual basis for a guilty plea may be determined from the record, including presentence reports and transcripts. *See Fowler v. State*, 109 Idaho 1002, 1005, 712 P.2d 703, 706 (Ct. App. 1985). In determining whether a district court erred in accepting a guilty plea without further inquiring into the factual basis, this Court held that a defendant's statements that he lacked the intent for the crime charged are not dispositive. *Hoffman*, 108 Idaho at 722, 701 P.2d at 670. We came to a similar conclusion in *Fowler*, 109 Idaho 1002, 712 P.3d 703, where the defendant pled guilty to first degree burglary. He argued that statements contained within the PSI report, regarding a lack of intent to steal anything once inside the building, created a duty upon the district court--at the time of sentencing--to inquire into the factual basis for the

---

[2] Sileoni states he does not challenge the voluntariness of the plea and "is not asking this Court to declare his plea invalid," but only that "the case be remanded for the appropriate inquiry" and "[o]nly if the district court finds that a factual basis for the plea is lacking, would [Sileoni] then be allowed to withdraw the plea."

pleas. In deciding whether the statements raised an obvious doubt as to the defendant's guilt, thereby creating such a duty, we considered evidence in the record from officers, information in the PSI report, and prior transcripts. We found that, despite the defendant's assertions in the PSI, there was considerable circumstantial evidence from which strong inferences could be made that the defendant intended to commit theft when he broke into the building. *Id*. at 1005-06, 712 P.2d at 706-07. We concluded by stating, "[The defendant's] assertion in the presentence report of his lack of criminal intent was not sufficient to raise an obvious doubt as to his guilt. The court did not err in accepting [the defendant's] guilty plea." *Id.* at 1006, 712 P.2d at 707.

Turning to the record in this case, we find that the district court meticulously advised Sileoni of his rights and waivers and made a thorough inquiry into Sileoni's understanding of the proceedings, not once, but twice. In the first instance, the district court asked about Sileoni's education, ability to read and write, and whether the defendant had been apprised of the charges. The transcript reveals that Sileoni had roughly a ninth-grade education, but had no trouble reading and writing--by Sileoni's own account--and that Sileoni had discussed the charge and the decision to plead guilty with his attorney:

> [The Court]: Were you able to look at the evidence that had been gathered in this case to prosecute you such as the police reports and/or the Grand Jury proceeding?
> [Sileoni]: Yes, ma'am.
> [The Court]: And did that help you decide how you wanted to proceed today?
> [Sileoni]: Yeah, it did, your Honor.
> . . . .
> [The Court]: Have you discussed [a guilty plea] with your attorney?
> [Sileoni]: I did.
> [The Court]: And has he been able to answer all of your questions and advise you?
> [Sileoni]: Yeah, he did.
> . . . .
> [The Court]: Are you satisfied with the advice he's given you?
> [Sileoni]: Yeah, I am.

Furthermore, the following exchange took place prior to entry of the guilty pleas:

> [The Court]: Do you speak another language?
> [Sileoni]: Yeah. I speak Spanish as well.
> [The Court]: Okay. But you're not having trouble understanding me, are you?
> [Sileoni]: No.
> . . . .

6

| [The Court]: | And the way I understand it, at this point in time, you're not having any trouble understanding what's going on here in court? |
| [Sileoni]: | No, whatsoever. |

The court went on to discuss the maximum punishment for the battery charge with the sentencing enhancement, Sileoni's admissions to the police and other evidence in the case, and the waiver of rights that occurs by entering a guilty plea, including the right to a jury trial, the right to have the State prove the case beyond a reasonable doubt, the right to confront witnesses, and the right to remain silent. The court ascertained that the defendant was not forced into pleading guilty and then took the pleas:

| [The Court]: | If you plead guilty to this offense, battery with the intent to commit a serious felony, a rape, you would be telling me that you intentionally touched or struck a person against her will and that your intent in doing so was to commit rape. Is that what you did? |
| [Sileoni]: | Yeah, I did. |
| [The Court]: | How do you plead, then, to Count II, Part I, commission of a serious felony on January 19th, 2010 in Canyon County, Idaho? |
| [Sileoni]: | Yeah. |
| [The Court]: | Guilty or not guilty? |
| [Sileoni]: | Guilty. |
| [The Court]: | Going then to the second part, do you acknowledge that you used a deadly weapon or a knife in the acts you just pled guilty to in Count II, Part I? |
| [Sileoni]: | Yeah, I did. |

At the hearing scheduled for sentencing, Sileoni requested that the court interpreter remain present. However, Sileoni "indicated to the interpreter that he does understand many of the questions that are asked of him," but wanted the interpreter to continue interpreting. After becoming aware of Sileoni's desire for an interpreter, the district court, in an abundance of caution, decided to again take Sileoni's guilty pleas:

I've been talking with the attorneys about the fact that this case has been proceeding without the use of an interpreter, and I believe it's important that we revisit what has previously occurred.

It is very important, if you're going to plead guilty, Mr. Sileoni, that you do so knowingly and voluntarily, and so we're going to go through that again.

The court again reviewed Sileoni's language skills: "And you speak quite a bit of English?" Sileoni replied, "Yeah, that's right," and indicated he was having no trouble understanding the interpreter. After Sileoni stated that he had gone over the evidence in the case with counsel, the court asked whether those communications had been in English. Defense counsel replied that they had, stating, "I at no time felt that my client didn't understand me. . . . I didn't feel, in my

7

talking to him, that I needed an interpreter at the times I saw him at the jail." Upon the court's question as to whether Sileoni ever had any trouble understanding his attorney when they spoke in English, Sileoni answered, in English, "No." Next, the court asked, "And, [counsel], did you advise [Sileoni] of the rights he would be giving up by pleading guilty and the consequences?" Defense counsel answered, "I did, your Honor." Finally, the court asked defense counsel, "[D]o you believe there's a factual basis for the entry of the plea?" Defense counsel answered affirmatively. Consequently, the court again went through each of the waivers associated with the entry of a guilty plea and again asked Sileoni how he wanted to plead:

> [The Court]: If you plead guilty, you would be admitting to me that you battered the victim in this case with the intent to commit rape. Is that what you did?
> [Sileoni]: (Through the interpreter.) Yes, I did it.
> [The Court]: And did you use a knife as part of the crime?
> [Sileoni]: (Through the interpreter.) Yes.
> [The Court]: How do you plead, then, to battery with intent to commit rape in Canyon County on the 19th day of January of this year?
> [Defense Counsel]: Of last year, your Honor.
> [The Court]: I'm sorry. Of last year, 2010.
> [Sileoni]: (Through the interpreter.) Tell her yes.
> [The Court]: Do you plead guilty or not guilty?
> [Sileoni]: (Through the interpreter.) Yes.
> [The Court]: Do you plead guilty or not guilty? You have to say guilty or not guilty.
> [Sileoni]: Guilty, your Honor.
> [Sileoni]: (Through interpreter.) Guilty, Your Honor.

Sileoni argues the language barrier shows a serious risk that Sileoni may not have understood the elements of the crime and the nature of his admissions. Sileoni's argument here also relates to the intent to rape, which was an element of the felony battery charge. He suggests that he did not have an adequate understanding of the intent element when entering his pleas, he consistently denied any intent to have sex with the victim, and therefore, the district court should have inquired into the factual basis and erred in accepting the pleas.

We are not persuaded. There is nothing upon this record that shows Sileoni was uninformed regarding the element of intent. Sileoni did not represent that he had difficulties communicating with his attorney. Both Sileoni and his attorney stated that counsel had gone through the charge and the evidence with him and advised him as to his entry of guilty pleas. Sileoni repeatedly told the court that he understood the proceedings against him and his waivers, and twice admitted to and pled guilty to battery *with the intent to commit rape* and the sentencing

enhancement. While there are certainly cases where language barriers can prevent a knowing, intelligent, and voluntary guilty plea and perhaps require the court to establish a better factual basis for the plea or further clarify to ensure the defendant's understanding, such is not the case here. The psychosexual evaluation notes that Sileoni, though uneducated, was of average intelligence, and Sileoni assured the court that he understood the proceedings before the court.

Sileoni, nonetheless, points to information in the PSI report expressing Sileoni's lack of intent to have sexual intercourse with the victim (a necessary element of the intent to commit rape). In looking at the evidence before the court, we conclude it clearly established a factual basis for the guilty pleas. Aside from Sileoni's admissions to committing battery *with the intent to commit rape* in both plea colloquies noted above, we also have Sileoni's repeated admissions and the victim's statements that Sileoni rubbed her breasts and her vagina. Police reports contained within the PSI report indicate that the sexual contact was rough and done at knife point. By both Sileoni's statements and the victim's account, it was Sileoni who suggested that the two go to the back room, and in reference to that suggestion, Sileoni also made a comment, reported in the PSI report, indicating sex was a possibility: "I told [the victim] if she wanted to have sex with me for us to go to another place." In both versions of the crime, the victim ended up on the floor with her pants down and Sileoni repeatedly hit the victim. In short, there is a considerable amount of circumstantial evidence from which strong inferences could be made that Sileoni intended to commit rape when he committed battery upon the victim.

Finally, the statements indicating Sileoni did not want, did not intend, or did not need sex with the victim do not outbalance the numerous police reports, Sileoni's admissions, and the victim's statements from which strong inferences could be made that Sileoni had the requisite intent. Although Sileoni points to the facts that he did not remove his own pants during the encounter and denied having an erection, other evidence tends to show the victim's actions of screaming and yelling disrupted and ultimately ended the encounter. We cannot say what would have occurred had the attack continued, but we conclude Sileoni's statements and other facts he points to in the record are not sufficient to raise an obvious doubt as to his guilt. Because we conclude that the statements contained in the PSI report do not raise a plain and obvious doubt as to Sileoni's guilt, the district court did not err by failing to further inquire as to the factual basis for the pleas at the time of sentencing.

**B.      Imposition of an Excessive Sentence**

Sileoni contends that the district court abused its discretion by imposing an excessive sentence. He asserts that whether or not we vacate and remand, his sentence should be reduced. The State responds that the court considered the relevant factors when imposing its sentence and the record shows no abuse of discretion.

Our appellate standard of review and the factors to be considered when evaluating the reasonableness of a sentence are well established. *State v. Burdett*, 134 Idaho 271, 1 P.3d 299 (Ct. App. 2000); *State v. Sanchez*, 115 Idaho 776, 769 P.2d 1148 (Ct. App. 1989); *State v. Reinke*, 103 Idaho 771, 653 P.2d 1183 (Ct. App. 1982); *State v. Toohill*, 103 Idaho 565, 650 P.2d 707 (Ct. App. 1982). In order to prevail on a claim that a legal sentence is an abuse of discretion, the defendant must show that in light of sentencing criteria, the sentence was excessive under any reasonable view of the facts. *State v. Stover,* 140 Idaho 927, 933, 104 P.3d 969, 975 (2005); *State v. McGiboney*, 152 Idaho 769, 773, 274 P.3d 1284, 1288 (Ct. App. 2012). Where reasonable minds might differ, we respect the discretion of the trial court and will not supplant the trial court's views with our own. *McGiboney*, 152 Idaho at 773, 274 P.3d at 1288.

Sileoni acknowledges his sentences are within the statutory maximum, but argues that the district court abused its discretion because it failed to adequately consider mitigating factors. There are certainly mitigating factors present in this case: Sileoni's only prior criminal history is a juvenile runaway charge. Sileoni was physically abused as a young child by his uncles, who gave him alcohol and illegal drugs and whose sex acts Sileoni witnessed. Moreover, Sileoni is foreign-born, had difficulty in and did not complete high school, and consistently worked to support his family, which is indigent. Finally, Sileoni self-reported problems with methamphetamine, a history of other drug and alcohol abuse, and suicidal intimations beginning with suicide attempts at age eight or nine. Several family members and friends wrote letters in support of Sileoni, citing his troubled upbringing, his hard work, his care and support of family, and his minimal criminal history. We note that Sileoni will likely be deported upon release, and he argues this is also a mitigating factor because his threat to society upon release, particularly the victim, is therefore minimal.

Still, there are several factors that the district court considered as weighing in favor of the sentence it imposed. The second psychosexual evaluation, completed with the use of a Spanish interpreter, indicated that Sileoni was in a high risk category relative to other adult sexual

10

offenders and rated his risk to reoffend as moderately high. Furthermore, the evaluator expressed the opinion that Sileoni was not an appropriate candidate for community-based sex offender treatment and could benefit from specialized treatment in a structured setting provided by incarceration. This opinion was based on Sileoni's failure to view himself as a sex offender, attitudes supportive of sexual assault, his use of a weapon during the crime, and his tendency to blame, in part, his victim. The evaluation noted that Sileoni was willing to undergo treatment, but only if required of him.

Based on information available at sentencing, the State asked for a thirty-five-year sentence, the statutory maximum, with twenty years determinate. Sileoni asked for a fifteen-year sentence, with five years determinate. Instead, the district court felt that Sileoni was refusing to accept responsibility for his crime and imposed a unified sentence of twenty years, with ten years determinate. We do not find the sentence is excessive under any reasonable view of the facts. The court acknowledged Sileoni's age, family history, the abuse he experienced as a child, and his exposure at a young age to overt sexual acts. Still, the district court explained that its highest priority was the protection of the public and, because Sileoni continued to blame his victim and was a high risk to reoffend, chose to impose a significant term of incarceration. The district court did not abuse its discretion in imposing the sentence.

## III.

## CONCLUSION

We conclude Sileoni cannot show error, as there is clearly a factual basis for the pleas within the record, and the evidence Sileoni relies on does not raise an obvious doubt as to his guilt. We further conclude that Sileoni's sentence is not excessive under any reasonable view of the facts. Therefore, we affirm Sileoni's judgment of conviction and unified sentence of twenty years, with ten years determinate, for battery with the intent to commit a serious felony (rape) and possession of a deadly weapon during the commission of a crime.

Chief Judge GRATTON and Judge LANSING **CONCUR.**