## IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 50783

STATE OF IDAHO,

      Plaintiff-Respondent,

v.

TERRY ALLEN ASH, JR.,

      Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)

Filed:  December 19, 2024

Melanie Gagnepain, Clerk

---

Appeal from the District Court of the Third Judicial District, State of Idaho, Washington County.  Hon. Randall S. Grove, District Judge.

Judgment of conviction and unified sentence of twenty-one years, with a minimum period of confinement of eleven years, for involuntary manslaughter and use of a deadly weapon, <u>affirmed</u>.

Erik R. Lehtinen, State Appellate Public Defender; Ben P. McGreevy, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Amy J. Lavin, Deputy Attorney General, Boise, for respondent.

---

LORELLO, Judge

Terry Allen Ash, Jr., appeals from his judgment of conviction and unified sentence of twenty-one years, with a minimum period of confinement of eleven years, for involuntary manslaughter and use of a deadly weapon.  We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Ash and the victim were engaged in an altercation.  During the altercation, Ash shot the victim in the chest and killed him.  The State charged Ash with first degree murder.  The parties subsequently entered mediation during which Ash agreed to plead guilty to an amended charge of

involuntary manslaughter, I.C. § 18-4006(2), with a firearm enhancement, I.C. § 19-2520. In addition, the State agreed to recommend a unified sentence of twenty-five years, with a minimum period of confinement of eight years; Ash was free to argue for a lesser sentence.

At the outset of the sentencing hearing, Ash expressed concern that the State intended to present evidence and argument to persuade the district court that he was guilty of first degree murder despite the mediated resolution resulting in Ash's guilty plea to involuntary manslaughter with a firearm enhancement. Ash argued that any such efforts by the State would constitute a breach of the plea agreement. Ash recognized the district court's sentencing discretion but argued the district court should "decline any invitation by the State to ignore the very real difference in culpability between someone convicted of murder and someone convicted of involuntary manslaughter" and require the State to limit its sentencing argument to its agreement--that Ash's conduct was "negligent, reckless, or careless." Ash also asked the district court "to rule that [the State] may not introduce evidence of elements that are not consistent with manslaughter, specifically any arguments that [Ash] planned for this to happen" or that Ash had "malice" or "that there was any kind of conspiracy." The State responded that it intended to recommend the sentence it agreed to as part of the mediation--twenty-five years, with a minimum period of confinement of eight years--and that it was not planning to argue that Ash's conduct amounted to anything other than manslaughter. The district court ruled that "any kind of evidence or argument tending to show that" Ash "committed an intentional or planned act" would "violate the spirit of [the] plea agreement," but evidence that shows Ash engaged in "a more reckless or more dangerous act" was appropriate.

During the evidentiary portion of the sentencing hearing, the State presented testimony from eight witnesses. Ash objected to testimony regarding whether he typically carried a gun as he claimed after the shooting. The district court overruled the objection, explaining the evidence was "relevant on the issue of recklessness and whether or not [it] was an inherently dangerous situation, not for the purpose of an intentional killing." In addition to witness testimony, the State presented victim impact statements from the victim's mother, brother, and stepfather. Following the victim impact statements, the State presented argument and, consistent with the plea agreement, asked the district court to impose a unified twenty-five-year sentence, with a minimum period of confinement of eight years. The State argued that the "protection of society demands a significant jail sentence" based on Ash's recklessness. The State further argued that Ash's lack of

insight, minimization, and victim-blaming illustrates poor rehabilitation potential. Finally, the State argued that deterrence and retribution could be achieved by imposition of the recommended sentence and that probation, which Ash intended to request, would be inadequate.

Ash then presented argument, an allocution, and recommended the district court impose a suspended unified sentence of five years, with a minimum period of confinement of one year. Next, the district court, with the consent of defense counsel, engaged in a short colloquy with Ash. That colloquy included the following exchange:

[COURT]: In going through watching some of the videos and things like that, you made a statement about quick draw practice. Did you make that statement?
[ASH]: Yes, I did.
[COURT]: Is that something that you do?
[ASH]: It was something I did.
[COURT]: With that 44 magnum?[1]
. . . .
[ASH]: If they would have actually looked at the gun, they would have noticed things were filed down for quick draw purposes on that gun.
[COURT]: Do you practice quick drawing that from your hoodie pocket?[2]
[ASH]: I had a leather holster that was way too big and half the time wouldn't fit on my belt, so I would draw it out of the holster a lot of times in my hoodie pocket.
[COURT]: I guess what I'm asking you is when you were practicing this quick draw, were you practicing quick draw out of your hoodie pocket?
[ASH]: Basically, if I was wearing my hoodie.
[COURT]: But ordinarily that's out of a holster that you had?
[ASH]: Yeah. The gun was a little oversized for the holster itself.

The district court also clarified that the gun Ash used was single action.

Before imposing sentence, the district court took a recess to review additional materials and to "gather [its] thoughts" before "mak[ing] a decision." After returning, the district court made several comments explaining its consideration of the evidence and the objectives of sentencing, including:

So the only thing I can reasonably conclude from all the evidence is that [the victim] initiated the violent confrontation by punching you in the head. You took it to the next level by pulling your gun. And at that point, the fact that someone

---

[1]    The 44 magnum the district court referred to is the gun Ash used to shoot the victim.

[2]    Some of the testimony at the sentencing hearing revealed differing views on whether Ash was carrying the gun in a hoodie pocket or in his front pants pocket when he confronted the victim.

3

was going to get killed was probably inevitable. Do I believe that you planned this? Absolutely not. But you set this all in motion. I think you said yourself it was really a bad idea to go over there intoxicated with a gun in your pocket.

The district court later stated:

It is difficult for me to imagine a more serious involuntary manslaughter case under any circumstance than this one and the way it happened. Am I telling you that you went there with intent to do this? No. If I had concluded that, then probably this plea agreement would have been blown up and a lot of different things may have happened.

I'm convinced that you did not go there with the intent to kill [the victim]. I'm convinced that you didn't plan to do that, there really was no malice. But it was an incredibly reckless response to him hitting you in the head based on the initial reckless decision to go over there drunk with a gun.

I have to try and consider perhaps your faculties were compromised because of the intoxication. Perhaps you couldn't accurately perceive events because of your social awkwardness or your mental health challenges. But you've been around guns for an awful long time. You're familiar with them. What outweighs all of that is the incredibly reckless decision that you made at the time. For someone as experienced with firearms as you are, I think that makes you more culpable, despite your intoxication. In fact, someone as experienced with firearms as you are, you should have known better.

The district court concluded by imposing a unified sentence of twenty-one years, with a minimum period of confinement of eleven years. Ash appeals.

## II.

## STANDARD OF REVIEW

An appellate review of a sentence is based on an abuse of discretion standard. *State v. Burdett*, 134 Idaho 271, 276, 1 P.3d 299, 304 (Ct. App. 2000). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

## III.

## ANALYSIS

Ash argues that the district court abused its sentencing discretion for two reasons. First, Ash argues that the district court "placed too much weight on aggravating factors related to malice and intent to kill." Second, Ash argues that the district court did not "adequately consider"

4

mitigating factors. The State responds that the district court properly exercised its sentencing discretion. We hold that Ash has failed to show that the district court abused its sentencing discretion.

We first address Ash's argument that the district court "placed too much weight on aggravating factors related to malice and intent to kill." In support of his argument, Ash explains the difference between first degree murder and involuntary manslaughter[3] and then lists several statements the district court made during sentencing that Ash contends reflect the district court's belief that Ash "acted deliberately." Ash first cites the district court's comments that Ash may have killed the victim out of a sense of "betrayal" and contends that, by "highlighting" Ash's "supposed feelings of betrayal," the district court indicated that "Ash had a deliberate intention to take [the victim's] life, which would be relevant to malice and an intent to kill." Ash ignores the context in which the district court commented on his sense of betrayal. In context, the district court noted Ash's potential sense of betrayal when the victim hit Ash immediately before he responded by shooting the victim. That comment is not a reflection of an opinion on malice or intent. Moreover, it is consistent with a central theme of Ash's sentencing argument, which was that, according to Ash, he went to the victim's home in an effort to mend the friendship with the victim because Ash did not have "very many friends" and "felt always a little bit like an outsider" in the community. Ash has failed to show the district court's comment about betrayal was improper.

Ash next contends the district court "emphasized" that Ash pulled his gun in "haste" but did not get the gun "hung up on [his] clothing." Ash argues this reflects a suggestion by the district court that he "acted deliberately in pulling the gun in haste, rather than acting recklessly or under immediate threat." Pulling a gun in "haste" suggests the opposite of deliberate action. It suggests exactly what the district court repeatedly characterized Ash's behavior as--reckless. Ash's attempt to equate reckless and deliberate "in the court's mind" is contrary to the district court's explicit statement that it believed Ash acted recklessly, not intentionally, and is contrary to the plain-meaning difference between those two words. *See* WEBSTER'S THIRD NEW INTERNATIONAL

---

[3] Although not directly stated, based on his recitation of the difference between first degree murder and involuntary manslaughter, it appears that Ash is arguing that giving too much weight to "aggravating factors related to malice and an intent to kill" was improper since he pled guilty to involuntary manslaughter rather than first degree murder.

DICTIONARY 1896, 596 (1993) (defining "reckless" as careless: "marked by a lack of caution" and defining "deliberate" as "to ponder or think about with measured careful consideration and often with formal discussion before reaching a decision or conclusion"). Ash has failed to show it was improper for the district court to comment on the manner in which he drew his gun prior to shooting the victim.

Finally, Ash cites the district court's comments related to Ash's culpability based on his knowledge of and experience with a firearm and argues the district court's reasoning "displays" that it was "overly considering evidence tending to show malice and intent." Beyond this conclusory statement, Ash does not explain how the district court's consideration of Ash's conduct, including taking a firearm to the victim's home, especially while intoxicated, demonstrates consideration of "malice and intent." Indeed, there is no dispute that Ash intended to take his gun with him or that he carried it, unholstered, in his pocket. Those undisputed facts support the district court's conclusion that Ash behaved recklessly, not that the district court improperly considered malice and intent.

In short, the record does not support Ash's assertion that the district court "overly consider[ed] evidence tending to show malice and intent," particularly since the district court repeatedly characterized Ash's conduct as reckless and repeatedly assured him, in response to his objections, that it was well aware that Ash was being sentenced for involuntary manslaughter, not murder. Even so, the district court had wide discretion to consider all of the evidence presented and to view it in a manner the court deemed appropriate. *See State v. Garcia*, 166 Idaho 661, 681, 462 P.3d 1125, 1145 (2020) (explaining district court has discretion in weighing and determining which evidence is aggravating and which is mitigating). Moreover, as the Idaho Supreme Court has explained, the scope of information that can be presented to and considered by a court for purposes of sentencing is broad:

> There is no requirement that the State limit the information provided to the sentencing court to the amount estimated as necessary to convince the court to impose the recommended sentence. There should be no limitation placed on the information presented to the court regarding the background, character, and conduct of the defendant being sentenced . . . . Information that a sentencing court can rely upon includes a defendant's past criminal behavior that resulted in a conviction, the defendant's prior uncharged criminal conduct, and the defendant's prior conduct for which he was tried and acquitted. . . . Absent a provision in the plea agreement expressly limiting the information that the State can present, it can present any relevant information that could assist the court.

6

*State v. Flowers*, 150 Idaho 568, 573-74, 249 P.3d 367, 372-73 (2011) (citations omitted).

We next address Ash's argument that the district court did not "adequately consider" the mitigating factors, including his low risk for recidivism, employment history, mental health, family support, remorse, and abstinence from alcohol since the shooting and that this was Ash's first felony conviction. As noted, it is within the district court's discretion to weigh the evidence presented. Our role is limited to determining whether reasonable minds could reach the same conclusion as the district court. *State v. Biggs*, 168 Idaho 112, 116, 480 P.3d 150, 154 (Ct. App. 2020). A sentence of confinement is reasonable if it appears at the time of sentencing that confinement is necessary to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation, or retribution applicable to a given case. *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App. 1982).

The district court considered the objectives of sentencing (including the protection of society, deterrence, rehabilitation, and retribution) and the mitigating and aggravating factors pertinent to those objectives. Having reviewed the record in this case, we cannot say that the district court abused its discretion. The district court identified the correct legal standards, correctly perceived sentencing as a discretionary decision, acted within the boundaries of its discretion, and exercised reason when imposing Ash's sentence. Ash has failed to show the district court abused its sentencing discretion.

## IV.

## CONCLUSION

Ash has failed to show the district court abused its discretion in sentencing him to a unified term of twenty-one years, with a minimum period of confinement of eleven years, for involuntary manslaughter and use of a deadly weapon. Therefore, Ash's judgment of conviction and sentence are affirmed.

Chief Judge GRATTON and Judge TRIBE, **CONCUR**.